ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket No. 113670. Submitted February 14, 1990, at Detroit. Decided May 8, 1990.

MCI Telecommunications Corporation applied to the Michigan Public Service Commission for flexible rate authority. The Attorney General opposed the request. The PSC approved the application. The Attorney General appealed from the order of approval. Appellees in the action were the PSC, MCI, and AT&T Communications, Inc.

The Court of Appeals *held:*

1. The public notice issued by MCI was sufficient.

2. MCI's tardy filing of proof of publication of the public notice does not invalidate the order approving MCI's application.

3. The PSC did not violate the thirty-day provision for notice and opportunity to comment contained in MCL 484.103b(1); MSA 22.1443(2)(1) by construing it to mean that the PSC must issue its order within thirty days after the public notice is published rather than as requiring a period of thirty days for public comment before issuance of an order for flexible regulation.

4. The PSC did not violate MCL 484.103b(1); MSA 22.1443(2)(1) by authorizing flexible regulation for all of MCI's existing services.

5. The flexible regulation ordered here was not deregulation and, therefore, a contested case hearing was not required.

6. There is no inconsistency between 1986 PA 305, giving the PSC new authority to grant flexible regulatory control in situations where the market for telephone services is truly competitive, and MCL 484.110; MSA 22.1450, the general statute governing rate increases. If there is a conflict, Act 305 would control. When the requirements for flexible regulation under Act 305 are met, nothing further is required.

Affirmed.

REFERENCES

Am Jur 2d, Public Utilities §§ 240, 266, 267; Telecommunications §§ 12, 20.

See the Index to Annotations under Telecommunications; Utilities.

1. TELECOMMUNICATIONS — FLEXIBLE REGULATION — NOTICE.

A final order of flexible regulation of a telephone service may not be issued until notice to the public and an opportunity to comment is provided in a manner prescribed by the Public Service Commission; the requirements of procedural due process are satisfied where notice is given in such a manner as to reasonably convey the required information (MCL 484.103b[1]; MSA 22.1443[2][1]).

2. NOTICE — PROOF OF SERVICE — FAILURE TO FILE.

Failure to file proof of service does not affect the validity of the service (MCR 2.104[B]).

3. TELECOMMUNICATIONS — FLEXIBLE REGULATION — NOTICE — PUBLIC SERVICE COMMISSION.

The Public Service Commission must issue its order providing for flexible regulation of a telephone service within thirty days after the public notice regarding such a request is published; the commission is not required to provide thirty days for public comment before issuance of such an order; the time frame within the thirty-day period in which to allow interested parties to comment is left to the commission's discretion (MCL 484.103b[1]; MSA 22.1443[2][1]).

4. TELECOMMUNICATIONS — FLEXIBLE REGULATION — DEREGULATION.

A Public Service Commission order providing for flexible regulation of a telephone service is not the deregulation of the service which requires a contested case hearing before the order may be entered; deregulation is defined as exempting a service from regulation (MCL 484.103a, 484.103b; MSA 22.1443[1], 22.1443[2]).

5. TELECOMMUNICATIONS — FLEXIBLE REGULATION — INCREASE OF RATES.

There is no inconsistency between 1986 PA 305, which gave the Public Service Commission new authority to grant flexible regulatory control in instances where the market for telephone services is truly competitive, and MCL 484.110; MSA 22.1450, the statute concerning the increase of rates; when the requirements for flexible regulation under Act 305 are met, nothing further is required (1986 PA 305, MCL 484.110; MSA 22.1450).

*Frank J. Kelley,* Attorney General, and *Luis F. Fernandez* and *Robert L. Mol,* Assistant Attorneys General, for the Attorney General.

*Frank J. Kelley,* Attorney General, and *Don L. Keskey, Henry J. Boynton* and *James G. Berry,* Assistant Attorneys General, for the Public Service Commission.

*Marcia Alterman Franklin,* and *Houghton, Potter, Sweeney & Brenner* (by *James E. Brenner*), for MCI Telecommunications Corporation.

*Larry Salustro* and *Nancy H. Wittebort,* and *Fischer, Franklin, Ford, Simon & Hogg* (by *George Hogg, Jr.*), for AT&T Communications of Michigan, Inc.

Amicus Curiae:

*H. Wayne Wells* and *John M. Dempsey,* for Michigan Bell Telephone Company.

Before: DANHOF, C.J., and BRENNAN and G. S. ALLEN,* JJ.

PER CURIAM. In this matter of first impression the Attorney General appeals as of right from a November 10, 1988, order of the Michigan Public Service Commission approving an application of appellee MCI Telecommunications Corporation for flexible rate authority pursuant to recently enacted 1986 PA 305, MCL 484.103a-484.103f; MSA 22.1443(1)-22.1443(6).[1] Specifically, the PSC ordered as follows:

A. The application of MCI Telecommunications Corporation for regulatory flexibility is approved.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] 1986 PA 305 was enacted by the Legislature in late 1986. It substantially revises the regulation of intrastate telecommunication services by providing for flexible rate regulation and deregulation where competitive market forces exist.

B. MCI Telecommunications Corporation may decrease prices for existing services upon one day's notification to the Commission.

C. MCI Telecommunications Corporation may increase prices for existing services upon 14 to 30 days' notice to its customers and to the Commission.

D. MCI Telecommunications Corporation shall continue to be subject to the jurisdiction of the Commission and shall continue to geographically average its rates.

E. MCI Telecommunications Corporation shall, within 30 days, submit tariff sheets that properly reflect this order.

The Commission specifically reserves jurisdiction of the matters herein contained and the authority to issue such further order or orders as the facts and circumstances may require.

We affirm.

MCI is a telecommunications company authorized to provide interexchange telecommunications services throughout the state. On September 8, 1988, pursuant to Act 305, MCI filed an application for flexible regulation. Relying on MCL 484.103b; MSA 22.1443(2), MCI asked that it be permitted to change its rates for existing telecommunications services without individual approval and review by the PSC. Under flexible regulation, a price increase would become effective only after MCI notified its customers of the increase in rates, either fourteen days after notice by direct mail or by publication in a newspaper or thirty days after notice by insert included with the customer's bill. A price decrease would become effective upon notice to the PSC. In support of its request, MCI referred to the PSC's December, 1987, *Report to the Michigan Legislature on the Status of Telecommunications Competition in Michigan,* which disclosed that over forty companies purchased switched access

services from Michigan Bell Telephone Company in order to offer intraLATA (Local Access Transport Area) or interLATA toll service in Michigan, and argued that, due to the high degree of competition in Michigan, it would be unable to engage in predatory or discriminatory pricing.

On September 30, 1988, the PSC provided MCI with a Notice and Opportunity for Comment and directed MCI to publish the same on October 11, 1988, in *The Detroit News, Lansing State Journal, The Grand Rapids Press* and *The Mining Journal.*

On October 26, 1988, AT&T Communications of Michigan, Inc., filed its comments in support of MCI's request and agreed that, in view of the high competition in the marketplace, the public would be adequately protected if the application was granted.

On the same date, the PSC staff filed comments supporting MCI's proposal and noting that in an earlier case involving U S Sprint the PSC had found the market effectively competitive.

Also, on October 26, 1988, the Attorney General filed comments opposing the request. According to the Attorney General, the telecommunications market is not truly competitive and MCI had not demonstrated to the contrary. The Attorney General further argued that MCI had not shown that it was similarly situated to U S Sprint, the telecommunications company to which the PSC had previously granted flexible regulation. Also, MCI had failed to provide evidence concerning the scope and nature of the public interest in the long-distance market. The Attorney General further objected on grounds that MCI's application basically sought deregulation, thus requiring a contested case hearing under Act 305, § 3b(2), that the application did not provide customers adequate time to decide whether to continue with MCI should MCI

seek a rate increase and that, if the application was granted, MCI would have unlimited freedom to increase long-distance rates without any degree of scrutiny by the PSC.

On November 8, 1988, only thirteen days following the deadline for filing comments, MCI filed affidavits of publication of notice in *The Grand Rapids Press, Lansing State Journal,* and *The Mining Journal.* An affidavit of publication of notice in *The Detroit News* on October 11, 1988, was not filed until March 23, 1989.

On November 10, 1988, the PSC issued its order approving MCI's application for flexible regulation. The order was signed by Chairperson William Long and Commissioner Steven Fetter, with Commissioner Ronald Russell abstaining.

On December 9, 1988, the Attorney General filed a timely claim of appeal raising five grounds for reversal. We find that the grounds raised by the Attorney General are without merit and affirm the order granting flexible regulation.

I

WAS THE PUBLIC NOTICE ISSUED BY MCI DEFECTIVE BECAUSE THE NOTICE DID NOT INFORM THE PUBLIC OF THE EXISTENCE OF THE SUPPLEMENTAL APPENDIX AND DID NOT INFORM THE PUBLIC OF ITS RIGHT TO REVIEW THE SUPPLEMENTAL APPENDIX?

MCI filed a supplemental appendix to its application on September 30, 1988, a date some three weeks after the filing of its application. The Attorney General claims that his office did not know of the appendix until it received the PSC's final order which made reference to the appendix in its opening paragraph. Moreover, the Attorney General claims that MCI failed to provide notice to the public of the existence of the appendix.

Act 305, § 3b(1), provides that a final order of flexible regulation may not be issued until notice and an opportunity to comment is provided. However, the precise wording of the notice is not set forth in the act. Under current law, the requirements of procedural due process are satisfied where notice is given in such a manner as to reasonably convey the required information. *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950); *Trussell v Decker,* 147 Mich App 312, 323-325; 382 NW2d 778 (1985).

We find the notice sufficient. Act 305 provides that notice to the public and an opportunity to comment shall be given "in a manner prescribed by the commission." MCL 484.103b(1); MSA 22.1443(2)(1). Publication of the Notice and Opportunity for Comment was made in compliance with the PSC's directive and conveyed adequate information for any interested party. Nothing in the statute or the directive required mention of or reference to a supplemental appendix. The appendix only amplified the basic facts set forth in the application itself. As is pointed out in the appellate brief of the PSC, if the Attorney General had only reviewed the "Docket Table of Contents and Index" on file with the PSC, he would have immediately noticed that an appendix was on file and that the appendix contained information in support of the application. The Attorney General's failure to notice what was on file and open to inspection is not grounds for error.

II

DID MCI FAIL TO ISSUE THE PUBLIC NOTICE IN THE MANNER PRESCRIBED BY THE PSC?

The Attorney General argues that, though re-

quired to do so, MCI did not publish notice in *The Detroit News* and, consequently, that all MCI customers in the area serviced by *The Detroit News* received no notice of MCI's actions. This is simply not true. An affidavit of publication in *The Detroit News* was executed on November 4, 1988, six days before issuance of the PSC order, but the affidavit of publication was not filed until March 23, 1989. Thus, it was not the publication, but only the proof of publication, which was not made in compliance with the commission's order. MCR 2.104(B) expressly provides that a failure to file proof of service does not affect the validity of the service. Consequently, we decline to find that a tardy filing of proof of publication in *The Detroit News* invalidates the November 10, 1988, order. Furthermore, had the issue been raised below, the matter could have been corrected at that time.

### III

#### DID THE PSC VIOLATE THE THIRTY-DAY PROVISION FOR NOTICE AND OPPORTUNITY TO COMMENT WHEN IT PERMITTED ONLY FIFTEEN DAYS FOR THE FILING OF COMMENTS?

This issue is of first impression and involves the construction of MCL 484.103b(1); MSA 22.1443(2) (1), which provides in part:

> The commission shall not adopt a policy or issue an order providing for flexible regulation of a telephone service unless notice and an opportunity to comment is provided for in a manner prescribed by the commission. The period for notice and opportunity to comment shall not exceed the 30 days prior to the adoption of the policy or issuance of the order.

The Attorney General construes the language as

requiring a period of *thirty days for public comment* before issuance of an order. In support of this position the Attorney General refers to the legislative history of HB 5158. Neither the first nor second version of HB 5158 contained a provision for notice and opportunity to comment. The Senate Substitute for HB 5158, which substitute became Act 305, added the notice and comment provision as set forth above. The analysis section accompanying the Senate Substitute explained the provision as follows:

> The Senate Committee on Commerce adopted a substitute to the bill which reflects the following changes from the House passed version of the bill:
>
> \*   \*   \*
>
> The Senate substitute added a 30-day requirement of notice and an opportunity to comment before the PSC could adopt a policy or issue an order providing for flexible regulation of a telephone service. [Senate Legislative Analysis, HB 5158, December 11, 1986.]

In rebuttal, the PSC construes the language according to its "plain meaning," namely, that the PSC issue its order within thirty days after the public notice is published. It has long been the practice of the PSC to issue orders on a preannounced meeting date. Thus, the use of the word "prior" reflects the fact that the thirty-day period for "notice *and* opportunity to comment" works back from the preannounced meeting date. Under this interpretation the time frame within the thirty-day period in which to allow interested parties to comment is left to the PSC's discretion. Logically, the deadline for filing comments should provide a sufficient period prior to the date the PSC issues its order so that the PSC could evaluate the comments received and reach agreement on the

terms of the order. In support of this interpretation, the psc cites a different paragraph of the same Senate bill analysis relied upon by the Attorney General, cited above. It reads in part:

> Flexible Regulation
> The bill would allow the psc to exercise flexibility in its regulation of telephone services where a competitive market existed. The psc could not adopt a policy or issue an order providing for flexible regulation, however, unless notice and an opportunity to comment had been provided within 30 days prior to the adoption of the policy or issuance of the order.

The rules of statutory construction were summarized in *Joy Management Co v Detroit,* 176 Mich App 722, 730-731; 440 NW2d 654 (1989), lv den 433 Mich 860 (1989), as follows:

> A fundamental rule of statutory construction is that the court is obliged to ascertain and give effect to the intention of the Legislature, and it is equally axiomatic that words are to be given their ordinary, normally accepted meaning. *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 240; 362 NW2d 618 (1984), reh den 421 Mich 1202 (1985). Where the meaning of a statute is plain and unambiguous, judicial construction or interpretation is precluded. *Land v The George Schmidt Co,* 122 Mich App 167, 170; 333 NW2d 30 (1982), lv den 417 Mich 1083 (1983). When determining legislative intent, statutory language should be given a reasonable construction considering the statute's purpose and the object sought to be accomplished. An act must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole. Statutes are to be construed so as to avoid absurd or unreasonable

consequences. *Michigan Humane Society v Natural Resources Comm,* 158 Mich App 393, 401; 404 NW2d 757 (1987); *Bar Processing Corp v State Tax Comm,* 171 Mich App 472, 477; 430 NW2d 753 (1988).

We reject the interpretation advanced by the Attorney General. Given the accepted psc policy of issuing its orders on a predetermined date, we find the language clear, unambiguous and administratively workable. But if the thirty-day period is construed to be the entire period for comment, no time is left for the commission to evaluate the comment and prepare its order, and the procedure is skewed administratively. Furthermore, the fifteen-day period for comment was administratively established in an earlier case to which the Attorney General was a party and offered no objection.[2]

IV

DID THE PSC VIOLATE MCL 484.103b(1); MSA 22.1443(2)(1)
BY AUTHORIZING FLEXIBLE REGULATION FOR ALL OF
MCI'S EXISTING SERVICES?

This issue, like the preceding issue, concerns the construction to be given the statutory language of § 3b(1). The Attorney General construes § 3b(1) to require the psc to determine that a competitive market exists for *each service* before the psc can order flexible service with respect to *that service.* The Attorney General argues that, because the November 10, 1988, order did not expressly make that determination for each service, but instead lumped all of mci's services together, the order is invalid. In rebuttal, mci and the psc argue that as long as there is record evidence supporting a

[2] *In re Competition of Telecommunications Services,* PSC Case No. U-8716 (March 29, 1988).

finding of competition in the marketplace concerning the activities sought to be made subject to flexible regulation, the statute allows flexible regulation and it is unnecessary to require a specific finding for each of MCI's tariff services.

We find nothing in § 3b(1) which explicitly or implicitly mandates that the PSC evaluate each service of MCI separately. When the PSC expressly found in its order of flexible regulation that "[i]n reference to MCI, the interexchange market is sufficiently competitive to protect the public interest," it found that as to each of MCI's services a competitive market existed. Any conclusion to the contrary would exalt form over substance, especially when the Attorney General has not shown that the PSC's finding is unsupported.

Additionally, the Attorney General argues that the comprehensive changes authorized by the November 10, 1988, order of flexible regulation go so far as to grant MCI authority to set its rates at any level without the PSC's review and, as such, constitutes deregulation which under § 3b(2) requires a contested case hearing before an order may be entered. We disagree.

MCI did not seek deregulation and was not granted deregulation. Deregulation is the absence of regulation. Flexible regulation as spelled out in the PSC order is hardly the absence of regulation. Under flexible regulation MCI remains subject to ongoing regulatory constraints, as the PSC noted in its November 10, 1988, order approving the application:

> MCI's services remain subject to quality of service guidelines, and the company must adhere to consumer billing standards. MCI is fully subject to complaint jurisdiction, must maintain tariff filings, and must seek approval for new services or corpo-

rate restructuring. Mci must geographically average its rates and must provide service on a nondiscriminatory basis. Approval of this proposal only removes the requirement for individual review of pricing for existing services, and may be rescinded at any time. Act 305 defines deregulation as "exempt[ing] a service provider from regulation" (MCL 484.103a). Clearly, this proposal is not for deregulation and therefore does not require a contested proceeding.

V

### DID THE PSC VIOLATE THE GENERAL TELEPHONE COMPANY ACT BY AUTHORIZING MCI TO INCREASE ITS RATES WITHOUT COMPLYING WITH THE PROVISIONS OF MCL 484.110; MSA 22.1450?

Lastly, the Attorney General argues that in enacting Act 305 the Legislature granted no new authority to the PSC and, therefore, the PSC order was issued in violation of the general statute governing telephone companies which requires a public hearing and a finding by the PSC that the rate increase is justified. MCL 484.110; MSA 22.1450. The issue raised is of first impression and connotes an inconsistency between 1986 PA 305 and MCL 484.110; MSA 22.1450. We find no inconsistency. Under 1986 PA 305 the PSC was given new authority to grant flexible regulatory control in situations where the market for telephone services was truly competitive. As was so aptly stated by the PSC upon issuing the challenged order:

It is well established that regulatory bodies have a considerable array of tools and techniques that they may use in carrying out their functions, including ratemaking. Through Act 305, we have been provided with an additional tool—competitive

market forces. We may rely upon these forces to achieve just and reasonable rates as properly as we may rely upon rate of return regulation. Because, as Staff notes in its comments, "MCI is fully constrained in its pricing by market forces," we find that approval of this proposal results in a setting of just and reasonable prices, which is within our ratemaking mandate.

Assuming, arguendo, that there is some conflict between the two statutes, Act 305 would control because it is the more specific in language and the more recent in enactment. *Bill v Northwestern Nat'l Life Ins Co,* 143 Mich App 766; 373 NW2d 214 (1985), lv den 425 Mich 877 (1986). However, contrary statutes should be interpreted as harmoniously as possible since, in promulgating a new law, the Legislature is presumed to have knowledge of and take into account existing statutes. *Broadwell v Secretary of State,* 158 Mich App 681, 686; 405 NW2d 120 (1987). Accordingly, we hold that when the requirements for flexible regulation under Act 305 are met, nothing further is required. It is inconceivable to conclude that the Legislature intended that an otherwise complying provider must remain subject to both statutes.

Affirmed. No costs, a question of public importance being involved.