# STATE OF MICHIGAN

# COURT OF APPEALS

JACK MARTIN, Emergency Manager of the
Detroit Public Schools, f/k/a ROY ROBERTS,
Emergency Manager of the Detroit Public Schools,

        Plaintiff-Appellee,

v

REVEREND DAVID MURRAY, IDA SHORT,
CAROL BANKS, LAMAR LEMMONS,
TAWANNA SIMPSON, ELENA HERRADA,
ANNIE CARTER, JUDY SUMMERS, HERMAN
DAVIS, WANDA REDMOND, and JUVETTE
HAWKINS-WILLIAMS,

        Defendants-Appellants,
and

JONATHAN C. KINLOCH,

        Intervening Party.

FOR PUBLICATION
January 20, 2015
9:00 a.m.

No. 319509
Wayne Circuit Court
LC No. 12-010545-AW

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

JANSEN, J.

Defendants, present and former members of the Detroit Public Schools Board of Education ("board of education" or "board"),[1] appeal by right the circuit court's opinion and order of November 22, 2013, confirming the authority of the Detroit Public Schools Emergency Manager ("emergency manager") to fill vacancies on the board of education and denying defendants' motion to set aside the emergency manager's appointment of Jonathan Kinloch to the board. We affirm.

---

[1] Defendants David Murray, Ida Short, Lamar Lemmons, Tawanna Simpson, Elena Herrada, Annie Carter, Judy Summers, Herman Davis, Wanda Redmond, and Juvette Hawkins-Williams are current members of the board of education. As discussed more fully hereinafter, defendant Carol Banks was formerly a member of the board of education.

# I

In late 2008, the Superintendent of Public Instruction declared the existence of a financial emergency within the Detroit Public Schools ("DPS"). In accordance with Michigan's then-existing emergency financial manager law, 1990 PA 72,[2] the Governor appointed Robert Bobb to serve as the DPS emergency manager.

The Legislature subsequently enacted the local government and school district fiscal accountability act, 2011 PA 4,[3] effective March 16, 2011, which repealed and replaced the provisions of 1990 PA 72. On May 4, 2011, the Governor appointed Roy Roberts to succeed Bobb as the DPS emergency manager. The Governor reappointed Roberts on March 30, 2012, and the reappointment became effective on April 2, 2012. See *Davis v Emergency Manager for Detroit Pub Schools*, 491 Mich 899, 901, 904 (2012) (YOUNG, C.J., concurring).

Meanwhile, on February 29, 2012, petitions seeking a referendum on 2011 PA 4 were filed with the Secretary of State. On a two-to-two vote, the Board of State Canvassers initially refused to certify the petitions. However, our Supreme Court ultimately ordered the Board of State Canvassers to certify the petitions and submit the matter to the electors. *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 595; 822 NW2d 159 (2012). On August 8, 2012, following the Supreme Court's decision in *Stand Up for Democracy*, the Board of State Canvassers unanimously voted to certify the petitions and place the referendum on the November 6, 2012, general election ballot.

2011 PA 4 was suspended for the duration of the referendum process and the provisions of 1990 PA 72 temporarily came back into effect pending the certification of the November 2012 general election results. Const 1963, art 2, § 9; see also OAG, 2011-2012, No. 7267, p 78 (August 6, 2012). At the general election of November 6, 2012, the electors rejected 2011 PA 4 by a vote of 2,130,354 in favor to 2,370,601 in opposition. The electors' rejection of 2011 PA 4 permanently revived 1990 PA 72. See *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 681; 662 NW2d 804 (2003); see also OAG, No. 7267, p 77.[4]

---

[2] Former MCL 141.1201 *et seq.*

[3] Former MCL 141.1501 *et seq.*

[4] Opinions of the Attorney General are not binding on the courts. *Frey v Dep't of Mgt & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987); *Attorney General v PowerPick Player's Club*, 287 Mich App 13, 34; 783 NW2d 515 (2010). Nevertheless, we agree with the Attorney General that 2011 PA 4 was constitutionally stayed upon certification of the referendum petitions by the Board of State Canvassers, that 1990 PA 72 was simultaneously brought back into temporary effect pending the certification of the referendum results, and that 1990 PA 72 was permanently revived when the Board of State Canvassers certified the results of the November 2012 general election.

Soon thereafter, the Legislature enacted the local financial stability and choice act, 2012 PA 436,[5] effective March 28, 2013, repealing and replacing 1990 PA 72. The Legislature specifically declared that it intended 2012 PA 436 to "function and be interpreted as a successor statute to . . . former 1990 PA 72[] and former 2011 PA 4[.]" 2012 PA 436, enacting § 2. In particular, the statute provides that the determination or confirmation of a financial emergency within a local unit of government under the former 1990 PA 72 or the former 2011 PA 4 remains effective. MCL 141.1570(1). On July 15, 2013, in accordance with 2012 PA 436, the Governor appointed Jack Martin to succeed Roberts as the DPS emergency manager.[6]

II

The board of education presently consists of 11 members.[7] Board member Carol Banks submitted her letter of resignation, effective June 28, 2013, thereby creating a vacancy on the board of education. The remaining board members publicized the vacancy through social media and solicited applications from interested persons. At a regularly scheduled meeting on July 11, 2013, the remaining ten members of the board of education interviewed three applicants and ultimately voted to appoint Sherry Gay-Dagnogo to fill the vacancy. Gay-Dagnogo was purportedly sworn in at that time. One day earlier, on July 10, 2013, Roberts had issued an order in his capacity as emergency manager appointing Jonathan Kinloch to fill the vacancy on the board of education; it appears that Roberts personally administered the oath of office to Kinloch at the time of his appointment. Kinloch appeared at the regular meeting of July 11, 2013, but the officers of the board of education refused to acknowledge him or include him in the roll call of board members.

III

The present action was commenced on August 8, 2012, when Roberts sued defendants for declaratory, injunctive, and other relief. Roberts alleged that defendants, the eleven members of the board of education, were acting or threatening to act outside their authority. Roberts requested that the circuit court enjoin them from abrogating plans, changing programs, canceling contracts, and altering budgets in advance of the upcoming 2012-2013 school year. Litigation

---

[5] MCL 141.1541 et seq.

[6] Martin had previously served as emergency manager of the Highland Park Public Schools and as a financial officer for the city of Detroit.

[7] In a first-class school district wherein the electors have not approved a reconfiguration of the board of education under MCL 380.410, the board of education consists of 11 members, MCL 380.403a(2), 4 of whom are elected at large, MCL 380.411a(2), and 7 of whom are elected to represent voting districts, MCL 380.412a(2) and (5). The Attorney General has opined that because the pupil membership of DPS has fallen below 100,000, DPS no longer qualifies as a first-class school district under MCL 380.402 and is now a general-powers school district under MCL 380.11. OAG, 2009-2010, No. 7234, p 75 (July 20, 2009). However, we need not resolve this issue on appeal because our ultimate conclusion is the same irrespective of whether DPS is a first-class school district or a general-powers school district.

was protracted and numerous motions seeking additional relief were filed throughout the course of the circuit court proceedings. Eventually, on October 8, 2013, defendants filed a motion requesting that the circuit court (1) set aside the emergency manager's appointment of Kinloch to the board of education, and (2) declare that the emergency manager is not authorized to fill vacancies on the board of education. Defendants argued that notwithstanding the existence of a financial emergency within the district and the broad powers conferred upon the emergency manager by law, the remaining board members—and not the emergency manager—possessed the exclusive authority to fill any vacancy on the board of education occasioned by a member's resignation. Defendants contended that the sections of 2012 PA 436 granting emergency managers the authority to fill such vacancies were unconstitutional and violated the separation-of-powers doctrine.

The circuit court acknowledged that under the Revised School Code, MCL 380.1 *et seq.*, and the Michigan Election Law, MCL 168.1 *et seq.*, the ten remaining members of the board of education would have possessed the authority to fill the vacancy occasioned by Banks's resignation if there had been no declared financial emergency within DPS at the time. However, citing MCL 141.1549(2), MCL 141.1552(1)(ee) and (ff), and MCL 141.1552(2), the circuit court ruled that the emergency manager possessed the exclusive power to fill the vacancy occasioned by Banks's resignation unless that power was specifically delegated to the board of education in writing. Because this power of appointment had not been delegated to the board, the circuit court held that the emergency manager's appointment of Kinloch was valid and that the board of education's purported appointment of Gay-Dagnogo was void. In addition, the court rejected defendants' argument that the sections of 2012 PA 436 which grant appointment powers to emergency managers violate the constitutional doctrine of separation of powers.

IV

Whether the authority to fill the vacancy on the board of education rested with the emergency manager or the remaining board members is a question of law. "Questions of law, including questions of statutory interpretation, are reviewed de novo on appeal." *Risk v Lincoln Charter Twp Bd of Trustees*, 279 Mich App 389, 396; 760 NW2d 510 (2008). Similarly, "[w]hether a violation of the separation of powers doctrine has occurred is a question of law that this Court reviews de novo." *Harbor Tel 2103, LLC v Oakland Co Bd of Comm'rs*, 253 Mich App 40, 50; 654 NW2d 633 (2002). Inasmuch as defendants sought declaratory and injunctive relief, we generally review such matters for an abuse of discretion. *Mich Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 217; 634 NW2d 692 (2001); *Allstate Ins Co v Hayes*, 442 Mich 56, 74; 499 NW2d 743 (1993); *Barrow v Detroit Election Comm*, 305 Mich App 649, 662; 854 NW2d 489 (2014).

V

As a preliminary matter, we note that defendants actually sought two different forms of relief from the circuit court. First, they sought a declaration that the emergency manager lacked the authority to fill vacancies on the board of education in general. Second, they sought a judgment invalidating the emergency manager's appointment of Kinloch to the board of education. Examining their second request first, we note that defendants' attempt to invalidate the emergency manager's appointment of Kinloch, and to effectively "try title" to the office of

member of the board of education, likely should have been brought by way of quo warranto rather than by way of a motion. "Quo warranto is the *only* appropriate remedy for determining the proper holder of a public office . . . including who is the proper holder of the position of school board member[.]" *Davis v Chatman*, 292 Mich App 603, 612; 808 NW2d 555 (2011) (emphasis added); see also *Layle v Adjutant General*, 384 Mich 638, 641; 186 NW2d 559 (1971) (noting that quo warranto is the "exclusive remedy to try title to office finally and conclusively"). Nonetheless, because defendants' claim concerning the proper officeholder is subordinate to and inextricably tied to their other claim—namely, that the emergency manager lacked the authority to fill the vacant position in the first instance—we will overlook any procedural irregularities that might have been committed by defendants in this regard.

VI

In general, when a vacancy occurs on a board of education,[8] the remaining board members possess the authority to fill the vacancy by appointment. This is true for both first-class school districts and general-powers school districts. With respect to first-class school districts, § 411a(6) of the Revised School Code, MCL 380.411a(6), provides:

> If a vacancy occurs on the first class school district board from among the at large members, the vacancy shall be filled by majority vote of the remaining first class school district board members at a meeting called by the president of the board for that purpose. If a person is appointed to fill a vacancy for which the unexpired term is more than 1 year and 8 months, that person shall serve until January 1 following the next general election. At that first general election the vacancy shall be filled for the unexpired term. A vacancy shall not be filled later than 60 days before a primary election at which at large board members are to be nominated.[9]

With regard to general-powers school districts, § 311(1) of the Michigan Election Law, MCL 168.311(1), provides:

> (1) If less than a majority of the offices of school board member of a school district become vacant, the remaining school board members shall fill each vacant office by appointment. If a vacancy in the office of school board member is not filled within 30 days after the vacancy occurs or if a majority of the offices of school board member of a school district become vacant, the intermediate school board for that school district shall fill each vacancy by appointment. An

---

[8] "The legislature may provide by law the cases in which any office shall be vacant . . . where no provision is made in th[e] constitution." Const 1963, art 4, § 38. MCL 168.310(2) enumerates the specific conditions under which the office of school board member becomes vacant. These include, among other things, the resignation, removal, disqualification, or death of a school board member.

[9] Banks was one of the four at-large members of the board of education.

-5-

individual appointed under this subsection serves until a successor is elected and qualified.

However, these general statutes give way to more specific enactments when a financial emergency exists within the school district.  When an emergency manager is appointed for a local government under 2012 PA 436, that local government enters receivership.  MCL 141.1542(q).  Except as otherwise provided by 2012 PA 436,

during the pendency of the receivership, the authority of the chief administrative officer and governing body to exercise power for and on behalf of the local government[10] under law, charter, and ordinance shall be suspended and vested in the emergency manager.  [MCL 141.1552(2).]

The Legislature has conferred upon emergency managers broad authority to act for and in place of the governing body of the local government:

Upon appointment, an emergency manager shall act for and in the place and stead of the governing body and the office of chief administrative officer of the local government.  The emergency manager shall have broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the local government and the local government's capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare.  Following appointment of an emergency manager and during the pendency of receivership, the governing body and the chief administrative officer of the local government shall not exercise any of the powers of those offices except as may be specifically authorized in writing by the emergency manager or as otherwise provided by this act and are subject to any conditions required by the emergency manager.  [MCL 141.1549(2).]

Among other things, emergency managers are specifically empowered to "[r]emove, replace, appoint, or confirm the appointments to any office, board, commission, authority, or other entity which is within or is a component unit of the local government," MCL 141.1552(1)(ff), and to "[t]ake any other action or exercise any power or authority of any officer, employee, department, board, commission, or other similar entity of the local government, whether elected or appointed, relating to the operation of the local government," MCL 141.1552(1)(ee).  "The power of the emergency manager shall be superior to and supersede the power of any of the foregoing officers or entities."  *Id*.

As a remedial statute, 2012 PA 436 exists to provide specific tools for resolving financial emergencies within local governments that are not available under more general legislation.  It is axiomatic that "when two statutes appear to control a particular situation, the more recent and more specific statute applies."  *People v Bragg*, 296 Mich App 433, 451; 824 NW2d 170 (2012);

---

[10] For purposes of 2012 PA 436, the term "local government" includes school districts such as DPS.  MCL 141.1542(k); see also MCL 141.1542(t).

*Attorney General v Pub Serv Comm*, 183 Mich App 692, 705; 455 NW2d 724 (1990). 2012 PA 436 is both more specific and more recently enacted than the Revised School Code and the Michigan Election Law. The provisions of 2012 PA 436 therefore control over MCL 168.311(1) and MCL 380.411a(6) when a school district is in receivership.

"The legislature may provide by law . . . the manner of filling vacancies where no provision is made in th[e] constitution." Const 1963, art 4, § 38. As 2012 PA 436 makes clear, unless the emergency manager has specifically delegated the power of filling vacancies to the board of education in writing, the board of education is divested of its authority to exercise that power during the pendency of the receivership. MCL 141.1549(2); see also MCL 141.1552(2). Because no such written delegation has been made in this case, we conclude that the emergency manager has the exclusive authority to fill vacancies on the board of education by appointment during the pendency of the DPS receivership. MCL 141.1549(2); MCL 141.1552(1)(ff); see also MCL 141.1552(1)(ee).

We are not persuaded by defendants' argument that the aforementioned provisions of 2012 PA 436 violate the constitutional doctrine of separation of powers. In essence, defendants argue that the emergency manager, having assumed the executive powers of the chief administrative officer of the school district, may not constitutionally appoint individuals to the legislative body of the district. Just as the Governor may not constitutionally fill vacancies in the Michigan Legislature by appointment, defendants contend, the emergency manager, vested with the executive powers of the school district, may not constitutionally fill vacancies on the board of education. We cannot agree.

It is true that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. It is equally true that the Governor may not constitutionally fill vacancies in the Legislature. Const 1963, art 5, §§ 11, 13. But it does not follow that the emergency manager may not constitutionally fill vacancies on the school board.

"[T]he separation of powers doctrine stated in Const 1963, art 3, § 2 applies only to the state level of government and therefore does not apply to local governmental units." *Harbor Tel*, 253 Mich App at 50-51; see also *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 266-267; 566 NW2d 514 (1997). Indeed, many local governmental officials such as city managers and township supervisors exercise both executive and legislative functions. See *Rental Prop Owners*, 455 Mich at 267-268; *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 587-588; 640 NW2d 321 (2001). Likewise, the legislative bodies of local governments may exercise executive and quasi-judicial powers at times. *Rental Prop Owners*, 455 Mich at 267-268. See also Const 1963, art 7, § 8 (granting both legislative and administrative powers to county boards of commissioners); Const 1963, art 7, § 18 (granting both legislative and administrative powers to township boards). The constitutional doctrine of separation of powers does not prohibit the Legislature from authorizing an emergency manager to fill vacancies on the board of education by appointment while at the same time exercising the powers of the chief administrative officer of the school district.

Nor can we agree with defendants' novel contention that the emergency manager's appointment of Kinloch to fill the vacancy on the board of education was infected by an impermissible conflict of interest because the board must remain free of the emergency manager's control. Defendants argue that in order for 2012 PA 436 to operate as intended, the board of education must remain independent of the emergency manager. They contend that if the emergency manager is permitted to fill vacancies on the board of education by appointment, the board will no longer be able to function as an independent check on the emergency manager's actions. The statutory text provides no support for these assertions.

True enough, 2012 PA 436 permits the governing body of a local government to remove an emergency manager by a supermajority vote after the emergency manager has served for 18 months. MCL 141.1549(6)(c). Without question, however, the Legislature did not intend for the governing body to retain any other significant oversight powers during the pendency of the financial emergency. As previously explained, "during the pendency of the receivership, the authority of the chief administrative officer and governing body to exercise power for and on behalf of the local government . . . *shall be suspended and vested in the emergency manager*," MCL 141.1552(2) (emphasis added), and the governing body and chief administrative officer "*shall not exercise any of the powers of those offices* except as may be specifically authorized in writing by the emergency manager or as otherwise provided by this act," MCL 141.1549(2) (emphasis added). There is simply no support for defendants' argument that 2012 PA 436 empowers the board of education to exercise broad oversight powers and act as a check on the emergency manager's actions during the receivership. Consequently, there was no conflict of interest.

VII

During the pendency of the receivership, the emergency manager has the exclusive authority to fill any vacancies on the board of education by appointment. The power of the remaining board members to fill such vacancies is suspended during the financial emergency unless the emergency manager delegates that power to the board in writing. We affirm the circuit court's ruling to this effect. We also affirm the circuit court's order validating the emergency manager's appointment of Kinloch and invalidating the board of education's purported appointment of Gay-Dagnogo.

Affirmed. No taxable costs pursuant to MCR 7.219, a public question having been involved.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Mark T. Boonstra