*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT H. FINCH,

       Plaintiff-Appellee,

UNPUBLISHED
May 28, 2019

v

No. 344515
Grand Traverse Circuit Court
LC No. 2005-003273-UF

HOLLY J. RUDOLPH, formerly known as
HOLLY J. FINCH,

       Defendant-Appellant.

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

This child-support dispute arises from plaintiff-father's agreement to pay for the children's non-insured health care expenses and to "use his best abilities" to pay for the children's college education. Those obligations were incorporated into a consent divorce judgment and a shared parenting decree issued by an Ohio state court in 2004. In 2018, defendant-mother filed motions in Grand Traverse Family Court (the circuit court) to enforce the shared parenting decree. The circuit court denied the motions, ruling that it lacked subject-matter jurisdiction to enforce the pertinent provisions of the shared parenting decree. Defendant appeals by leave granted.[1]

Defendant argues that the circuit court had jurisdiction to enforce the shared parenting decree per a 2008 order from the Ohio court transferring this case to Michigan. However, for the reasons discussed below, the 2008 order did not transfer jurisdiction over the shared parenting decree provisions that defendant seeks to enforce in this case. After review, we conclude that defendant must seek enforcement of plaintiff's obligations in accordance with the uniform acts that govern enforcement of out-of-state support orders and judgments. Because defendant did not seek enforcement under those acts, we affirm the trial court's decision to deny the motions to

---

[1] *Finch v Rudolph*, unpublished order of the Court of Appeals, issued October 25, 2018 (Docket No. 344515).

enforce. Our decision is without prejudice to any enforcement action brought following registration of the judgment in Michigan.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties married in Michigan in 1992 and divorced in Ohio in July 2004. The marriage produced two children. The children were elementary school age at the time of the divorce; they are now college-aged adults.

During the divorce proceedings, the parties' respective counsel jointly presented a shared parenting plan to the Ohio court for approval. The Court of Common Pleas of Delaware County (the Ohio court) found that the plan was in the children's best interest, and incorporated the plan into the court's shared parenting decree issued in 2004.[2] The shared parenting plan was also incorporated in the parties' separation agreement, which in turn was incorporated in the consent judgment of divorce.

The shared parenting plan required plaintiff to pay child support for each child until he or she reached age 19. The plan also required plaintiff to retain health insurance for the children until they reached age 19. According to the plan, defendant-mother was to pay the first $100 in the children's annual health expenses not covered by insurance, and plaintiff was to pay the remainder of those annual expenses until the children reached age 19. Regarding college expenses, plaintiff was required to "use his best abilities to provide an undergraduate college education for the parties' two children," subject to some limitations.

The parties were awarded joint legal custody, i.e., "shared parenting," and the children lived primarily with defendant, i.e., "the residential parent." At the time the parties divorced, plaintiff lived in Ohio and defendant lived in Michigan.

In September 2005, defendant filed a petition in the circuit court to "transfer" jurisdiction over this case from Ohio and establish Grand Traverse County as the most convenient forum given the parties' present residences: defendant was living in Grand Traverse County, and plaintiff was by then living in Milton, Michigan. Defendant alleged that there were property-settlement-enforcement issues and parenting-time issues. The circuit court granted defendant's petition and accepted jurisdiction over the case.

---

[2] In Ohio, a shared parenting plan "includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement." *Sayre v Furgeson*, 2016-Ohio-3500; 66 NE3d 332, 340 (Ohio App, 2016). A shared parenting plan can be included in a shared parenting decree, which is a court order that "grants the parents shared parenting of a child." *Id*.

However, plaintiff contested the transfer of jurisdiction in the Ohio court. Ultimately, in September 2008 the Ohio court granted the transfer for "all . . . issues related to child custody, visitation and shared parenting, with the exception of child support . . . ."[3] The Ohio court determined that Ohio law required it to maintain jurisdiction over child-support issues because the parties had not consented to the transfer.

Beginning in 2010, the circuit court heard and decided matters relating to the children's health care. In October 2010, the circuit court denied defendant's request for reimbursement of health care expenses, reasoning that Ohio retained jurisdiction over child-support issues and that reimbursement for medical expenses was one of those issues. However, in February 2014, the circuit court, with a different judge now presiding, ordered plaintiff to pay for the children's accrued health care expenses including the cost of current and future counseling.

In July 2017, when the children were ages 20 and 17, defendant filed motions in the circuit court to enforce the shared parenting decree provisions regarding health care and college expenses. Defendant averred that plaintiff was not contributing to the cost of the son's college education and that plaintiff had liquidated the investment accounts intended to be used for the children's college education. With respect to medical expenses, defendant averred that plaintiff refused to pay expenses per the February 2014 order and owed $2,668.62 in outstanding non-insured health care expenses.

Plaintiff, then residing in Texas, responded with a summary-disposition motion seeking dismissal for lack of subject-matter jurisdiction. Plaintiff argued that the Ohio court retained jurisdiction over child-support issues and therefore the circuit court lacked jurisdiction over defendant's request for reimbursement of health care expenses. As for college expenses, plaintiff argued that this was not one of the matters over which the Ohio court transferred jurisdiction.

In February 2018, while the parties' motions were pending in the circuit court, plaintiff filed a motion in the Ohio court seeking modification of the shared parenting decree, including elimination of his obligations to pay non-insured health care expenses and assist with the children's college expenses. In April 2018, the Ohio court denied plaintiff's motion to modify. As to college expenses, the court reasoned that this obligation did not constitute child support and was therefore non-modifiable under Ohio law. With respect to plaintiff's obligation to pay non-insured health care expenses, the court denied the motion because those expenses were in the nature of child support and enforceable as a part of the parties' separation agreement. However, the Ohio court also determined that it no longer had "continuing exclusive jurisdiction" to modify child support. The court noted that it had previously retained jurisdiction over child-support related matters, but explained that "the Ohio [Uniform Interstate Family Support Act] has since been amended" effective January 1, 2016. Under the revised act, the court determined that it no longer had jurisdiction to modify the parties' child-support obligations.

---

[3] The Ohio court also retained jurisdiction of the issues relating to spousal support.

Back in Michigan, in May 2018 defendant-mother submitted a supplemental brief pertaining to the Ohio court's decision. At the motion hearing, the circuit court was concerned that it lacked subject-matter jurisdiction. After reading the Ohio court's most-recent decision, the circuit court stated, "I know they don't have jurisdiction to modify [plaintiff's support obligations], but they still have jurisdiction to enforce." The court believed that there had not "been a proper transfer under the uniform law." Defendant's counsel maintained that the authority to enforce the shared parenting decree had been properly transferred to the circuit court.

On June 5, 2018, plaintiff filed a complaint for superintending control in this Court, seeking dismissal in the circuit court for lack of subject-matter jurisdiction, and to disqualify the presiding and chief Grand Traverse judges from the case.[4]

In an opinion and order issued on June 14, 2018, the circuit court denied defendant's motions to enforce and granted plaintiff's motion for summary disposition. The circuit court began by discussing the Ohio court's ruling that it no longer had continuing, exclusive jurisdiction over child support. The circuit court indicated that this ruling had no bearing on the decision before it because the issue in this case was whether the court had subject-matter jurisdiction to *enforce*, not modify, plaintiff's obligations under the shared parenting decree.

Next, the circuit court determined that it did not have subject-matter jurisdiction to enforce payment of college expenses because the Ohio court did not give the circuit court jurisdiction to enforce a contract relating to the parties' divorce. The circuit court then ruled that it also lacked jurisdiction over defendant's motion to enforce the parties' agreement regarding uninsured health care expenses. The circuit court reasoned that those expenses constituted child support under Ohio law and that the Ohio court had retained jurisdiction to enforce child-support provisions. The court also rescinded the February 2014 order requiring plaintiff to pay past and future health care expenses.

## II. ANALYSIS

### A. 2008 ORDER TRANSFERRING JURISDICTION

On appeal, defendant argues that the circuit court erred in ruling that it lacked subject-matter jurisdiction to enforce plaintiff's health care and college expense obligations.[5] She

---

[4] We later granted defendant's motion to dismiss plaintiff's complaint for superintending control. *In Re Finch*, unpublished order of the Court of Appeals, issued October 25, 2018 (Docket No. 344126).

[5] "Whether a court has subject-matter jurisdiction is a question of law reviewed de novo." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013). "Subject-matter jurisdiction concerns a body's abstract power to hear a case of the kind or character of the one pending, and is not dependent on the particular facts of the case." *In re Complaint of Pelland*, 254 Mich App 675, 682; 658 NW2d 849 (2003). "The circuit court's

primarily relies on the Ohio court's 2008 order transferring jurisdiction to the circuit court. Again, that order granted transfer for "all . . . issues related to child custody, visitation and shared parenting, *with the exception of child support . . . .*" (Emphasis added).

Defendant does not contest the circuit court's ruling that the health care provision is in the nature of child support. Thus, jurisdiction over this provision was not transferred by the Ohio court in 2008. And in 2018, the Ohio court merely ruled that it lacked continuing, exclusive jurisdiction to modify child-support issues. The Ohio court did not transfer any additional part of the case to the circuit court. We therefore affirm the trial court's denial of defendant's motion to enforce the health care provision, and its decision to vacate the February 2014 order requiring plaintiff to pay health care expenses.

As for the college expense provision, defendant agrees with the circuit court that an agreement to pay college expenses does not constitute child support under Ohio law. From there she argues that the circuit court gained jurisdiction over that provision of the shared parenting decree when the Ohio court transferred all issues related to "shared parenting." Defendant mistakenly equates "shared parenting" with the shared parenting decree. In Ohio, "shared parenting" refers to joint custody. See *Hise v Laiviera*, 2018-Ohio-5399; ___ NE3d ___, ___ (Ohio App, 2018) ("Joint custody, as the term was formerly used in Ohio and as the term is used by other states, is considered equivalent to shared parenting."). Thus, the Ohio court transferred to the Michigan court issues related to parenting time, physical custody and legal custody.[6] The Ohio court did not transfer enforcement of the entire shared parenting decree as defendant argues. On that basis, we affirm the trial court's decision to deny defendant's motion to enforce the college expense provision. See *Gleason v Michigan Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason."). In sum, defendant fails to carry her burden of showing lower court error. See *Menard, Inc v Escanaba*, 315 Mich App 512, 521 n 3; 891 NW2d 1 (2016).

Given the evident confusion concerning enforcement of foreign support orders, we take this opportunity to give an overview of the uniform acts which govern the out-of-state orders and judgments that defendant seeks to enforce. Specifically, with respect to the health care provision, the shared parenting decree constitutes an out-of-state support order that must be enforced in accordance with the Uniform Interstate Family Support Act (UIFSA), MCL 552.1101 *et seq*. While the Ohio court made its jurisdictional rulings based on the UIFSA, neither the circuit court nor the parties have sought to interpret or apply Michigan's UIFSA to these proceedings. Further, if the college expense provision is not governed by the UIFSA, then defendant needs to seek enforcement of that provision pursuant to Michigan's Uniform

---

subject-matter jurisdiction will be presumed unless denied by constitution or statute." *LME v ARS*, 261 Mich App 273, 279; 680 NW2d 902 (2004). Questions of statutory interpretation are also reviewed de novo. *Bukowski v City of Detroit*, 478 Mich 268, 273; 732 NW2d 75 (2007).

[6] Presumably, transfer of those issues was made in accordance with the Uniform Child Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq*.

Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.*, which also was not addressed in the lower court. Although we do not typically address issues not raised by the parties, it is clear to us that these uniform acts govern defendant's attempt to enforce the Ohio decree. See *Fieger v Cox*, 274 Mich App 449, 453 n 2; 734 NW2d 602 (2007) (addressing a possibly moot issue to provide "guidance for the bench and bar . . . .").

B. UIFSA

1. BACKGROUND

The UIFSA, "which has been adopted by all states, governs the procedure for establishing, enforcing, and modifying child and spousal support orders and for determining parentage when more than one state is involved in these proceedings." Annotation, *Construction and Application of Uniform Interstate Family Support Act*, 90 ALR5th 1. The "UIFSA consists of nine articles that supply procedural and jurisdictional rules for three types of proceedings within the context of child support enforcement." *In re Scott*, 160 NH 354; 999 A2d 229, 235 (2010).[7] The three proceedings are: "(1) a proceeding to establish a child support order when there is no prior child support order; (2) a proceeding to enforce an existing child support order; and (3) a proceeding to modify an existing child support order." *Id.* Michigan adopted the most recent version of the UIFSA effective January 1, 2016. See 2015 PA 255.

The foundation of the UIFSA is that there is only "one-child-support-order-at-a-time." This is accomplished in large part by the concept of "continuing, exclusive jurisdiction." Generally, the tribunal that issues the support order "retains continuing, exclusive jurisdiction over a child-support order, commonly known as CEJ." 9 Uniform Laws Annotated, UIFSA (2008), comment § 205, 2015 pocket part p 124.[8]

It is important to note that CEJ primarily concerns a court's ability to *modify* a support order. Indeed, CEJ is governed by Section 205 of the UIFSA, which explains when an issuing tribunal retains "continuing, exclusive jurisdiction to *modify* its child-support order . . . ." MCL 552.2205(1) (emphasis added).[9] Significantly, a court does not need CEJ to *enforce* a child-support order. "A keystone of UIFSA is that the power to enforce the order of the issuing tribunal is not 'exclusive' with that tribunal. Rather, on request, one or more responding tribunals may also exercise authority to enforce the order of the issuing tribunal." 9 Uniform Laws Annotated, UIFSA (2008), comment § 206, 2015 pocket part pp 125-126. The most direct

---

[7] We may rely on guidance from others states when interpreting uniform acts. *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008).

[8] The "official comments" to the UIFSA aid its interpretation. See *In re Scott*, 999 A2d at 234.

[9] Further, while the UIFSA does not use the phrase subject-matter jurisdiction, the official comments provide that the subject-matter jurisdiction refers to a court's ability to modify a support order. See e.g., 9 Uniform Laws Annotated, UIFSA (2008), comment § 201, 2015 pocket part p 120 (referring to "the statutory rule of subject matter jurisdiction for modification . . . .").

way to enforce an out-of-state support order is for the petitioner[10] to register that order for enforcement in another state. Article 6 of the UIFSA, which governs registration, provides in part that "[a] support order . . . issued in another state . . . may be registered in this state for enforcement." MCL 552.2601. To successfully register a support order for enforcement, a petitioner must comply with numerous filing requirements. See MCL 552.2602.

While the UIFSA does not use the word "transfer," it does provide ways that another state can "assume" CEJ. For example, the parties may consent to another state assuming jurisdiction provided that the child resides in the state or that state has personal jurisdiction over one of the parties. MCL 552.2205(2)(a); MCL 552.2611(1)(b). But, again, CEJ is only needed to modify an order; a party seeking to enforce an out-of-state support order need only register it in accordance with the UIFSA.

## 2. APPLICATION

The health care provision of the shared parenting decree is a child-support order subject to the UIFSA because it is a court order for benefit of a child that provides for "health care." See MCL 552.2102(bb).[11] Thus, defendant may seek to register and enforce that part of the shared parenting decree in accordance with the UIFSA. As stated, there are numerous requirements for registration with which defendant has not yet complied with. We note that some states only require "substantial compliance" with the UIFSA's registration procedure. See *Ex Parte Reynolds*, 209 So3d 1122, 1126-1127 (Ala Civ App, 2016). However, even if we were to adopt that approach, we cannot conclude that defendant has met that standard given that she has not expressly sought enforcement under the UIFSA.

As noted, no order from the Ohio court has transferred jurisdiction over child-support issues to the circuit court. And the Ohio court's 2018 opinion recognizing that it no longer had CEJ over those issues does not amount to a transfer. When the tribunal that issues the support order loses CEJ, it nonetheless retains the ability to enforce it:

> [I]f all the relevant persons—the obligor, the individual obligee, and the child— have permanently left the issuing state, absent an agreement the issuing tribunal

---

[10] Article 3 allows an "individual petitioner" to "initiate a proceeding authorized under this act," e.g., an enforcement proceeding, by filing a petition "directly in a tribunal of another state or a foreign country that has or can obtain personal jurisdiction over the respondent." MCL 552.2301(2).

[11] The UIFSA defines a child-support order as "a support order for a child, including a child who has attained the age of majority under the law of the issuing state or foreign country." MCL 552.2102(b). In turn, a support order is as "a judgment, decree, order, decision, or directive, whether temporary, final, or subject to modification, issued in a state or foreign country for the benefit of a child, a spouse, or a former spouse, that provides for monetary support, health care, arrearages, retroactive support, or reimbursement for financial assistance provided to an individual obligee in place of child support." MCL 552.2102(bb).

no longer has an appropriate nexus with the parties or child to justify the exercise of jurisdiction to modify its child-support order. . . . Note, however, that the original order of the issuing tribunal remains valid and enforceable. That order is in effect not only in the issuing state, but also in those states in which the order has been registered. [9 Uniform Laws Annotated, UIFSA (2008), comment § 205, 2015 pocket part pp 124-125.]

Thus, the trial court correctly indicated that plaintiff could still enforce the support order in Ohio even though Ohio no longer has CEJ.

Under the circumstances, we believe that the proper course is to affirm the circuit's denial of defendant's motion, but without prejudice to any enforcement action brought after registration under the UIFSA should that occur.

## C. UEFJA

Again, defendant agrees with the circuit court that plaintiff's obligation to contribute to the children's college education does not constitute child support under Ohio law.[12] Assuming for purposes of this appeal that the college expense provision is not subject to the UIFSA, then defendant would need to enforce that part of the shared parenting decree in accordance with the UEFJA.

"Pursuant to the Full Faith and Credit Clause, US Const, art IV, § 1, a judgment entered in another state is presumptively valid and subject to recognition in Michigan . . . ." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 382; 853 NW2d 421 (2014). The UEFJA provides the statutory procedure for obtaining enforcement of foreign judgments. *Id*. A "foreign judgment" is defined as "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state." MCL 691.1172.

We agree with defendant that the circuit court erred in ruling that it needed a transfer of jurisdiction from the Ohio to enforce a contract relating to the parties' divorce. Out-of-state divorce judgments incorporating settlement agreements are enforceable under the UEFJA. See *Peabody v DiMeglio*, 306 Mich App 397, 403-404; 856 NW2d 245 (2014). Similar to the UIFSA, however, defendant did not seek enforcement under the UEFJA, nor has she complied with the procedural requirements for enforcement. See MCL 691.1173; MCL 691.1174. For the same reasons as we gave regarding the UIFSA, we conclude that the trial court did not err in denying defendant's motion to enforce but do so without prejudice as to any future action seeking enforcement of the college expense provision under the UEFJA.[13]

---

[12] We note, however, that we are not aware of any court, Ohio or otherwise, holding that an order to pay a child's college expenses is not subject to the UIFSA. We decline to decide this issue, but do not preclude the parties from raising it below.

[13] Arguably, defendant could seek to enforce the health care expense provision under the UEFJA, as it is too part of the shared parenting decree and the divorce judgment. However, "when

### III. CONCLUSION

Michigan has enacted uniform acts that govern the enforcement of out-of-state support orders and judgments. However, defendant did not seek enforcement under those acts, and has not addressed them on appeal. Under those circumstances, we affirm the circuit court's decision to deny defendant's motions to enforce the shared parenting decree, while clarifying that defendant may seek to apply the uniform acts on remand without prejudice.[14]

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

two statutes appear to control a particular situation, the more recent and more specific statute applies." *Martin v Murray*, 309 Mich App 37, 48-49; 867 NW2d 444 (2015) (quotation marks and citation omitted). Thus, if any provision constitutes a child-support order under the UIFSA, it must be enforced in accordance with that act.

[14] We do not intend to tell the trial court how to resolve issues or arguments that may arise under the uniform acts.