# STATE OF MICHIGAN

# COURT OF APPEALS

BOARD OF TRUSTEES OF THE CITY OF
PONTIAC POLICE AND FIRE RETIREE
PREFUNDED GROUP HEALTH &
INSURANCE TRUST,

FOR PUBLICATION
March 17, 2015
9:05 a.m.

Plaintiff-Appellant,

v

No. 316418
Oakland Circuit Court
LC No. 2012-128625-CZ

CITY OF PONTIAC,

Defendant-Appellee.

Before: MARKEY, P.J., and OWENS and FORT HOOD, JJ.

PER CURIAM.

Plaintiff Board of Trustees of the City of Pontiac Police and Fire Retiree Prefunded Group Health and Insurance Plan (trustees) appeals by right Oakland Circuit Judge Daniel Patrick O'Brien's order granting defendant's motion for summary disposition as to plaintiff's complaint to require the city to pay its required annual contribution to the trust for the fiscal year ending June 30, 2012. The trust was established in 1996 as a tax exempt voluntary employees' beneficiary association (VEBA), 26 USC 501(c)(9), to hold the contributions of police and firefighter employees and those of the city pursuant to collective bargaining agreements (CBAs) between the city and the various unions of the city's police officers and firefighters. The trust held and invested these contributions to provide health, optical, dental, and life-insurance benefits to police and fire employees who retired on or after August 22, 1996, as required by the various CBAs. At issue is the efficacy of Executive Order 225 issued on August 1, 2012, pursuant to § 19(1)(k) of 2011 PA 4, MCL 141.1519(1)(k), by the city's emergency manager (EM), Louis H. Schimmel, which purported to amend the trust to remove the city's annual obligation to contribute to the trust agreement "as determined by the Trustees through actuarial evaluations." The trial court accepted defendant's argument that the city's EM properly modified the city's obligation to contribute to the trust for the fiscal year ending June 30, 2012, by modifying the existing CBAs between the city and police and firefighter unions. The trial court also ruled that plaintiff's claim under Const 1963, art 9, § 24, was without merit pursuant to *Studier v Michigan Pub Sch Employees Retirement Bd*, 472 Mich 642; 698 NW2d 350 (2005). We conclude, even assuming that Executive Order 225 was properly adopted pursuant to § 19(1)(k), that it did not retroactively eliminate the city's obligation to contribute to the trust for

-1-

the fiscal year ending June 30, 2012; consequently, we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2012, the Board of Trustees of the City of Pontiac Police and Fire Retirement System and plaintiff trustees filed their complaint in circuit court asserting that defendant funded the City of Pontiac Police and Fire Retirement System (PFRS), which provided retirement benefits to retired police and fire employees. In addition, plaintiffs asserted that defendant funded the trust, a tax-exempt VEBA, 26 USC 501(c)(9), which provided health, optical, dental, and life-insurance benefits to police and fire employees who retired on or after August 22, 1996. The trust is administered by its board of trustees comprised of five members consisting of the city's mayor, the city's finance director, and a firefighter, a police officer, and a fifth trustee selected by the other trustees, who could be a participant in the trust. Art IV, § 1. Plaintiffs alleged that defendant, through its EM, failed to pay its required contribution to the trust for the fiscal year between July 1, 2011 and June 30, 2012, which was actuarially determined to be $3,473,923.28. The trust includes the following relevant provisions:

### ARTICLE I

#### Definitions

* * *

Section 3: Contributions - The term Contributions as used herein, shall mean the payment required to be made to the Trustees and to the Trust Fund by the City *under the authority such as ordinance or City Council resolution or under any applicable existing Collective Bargaining Agreements or any future Collective Bargaining Agreements* for the purpose of providing group health, hospitalization and dental and optical and group life insurance for employees, retirees and beneficiaries covered by the Plan.

* * *

### ARTICLE II

#### Establishment of Trust

Section 1: The purpose of this Trust Fund . . . is to provide health and insurance benefits to eligible participants and beneficiaries of the Plan . . . . The

Grantor[1] intends the benefits provided by this Trust to be considered a benefit guaranteed by Article IX, Section 24 of the State of Michigan Constitution.

* * *

ARTICLE III

Contributions to the Trust Fund

Section 1: (a) The City-Employer shall be required to pay to the Trust Fund such amounts as the Trustees may determine are actuarially certified and are actuarially necessary to fund the Trust and provide benefits provided by the Plan consistent with actuarial valuations and calculations made by the Actuary for the Trust to result in a Prefunded Plan.

*Such contributions shall also be made in accordance with the Collective Bargaining Agreements between the collective bargaining associations and the employer City and this Trust Agreement*, and such other regulations of the Board of Trustees as are not inconsistent with the aforesaid authority.

(b) In addition to the amounts paid by the City on behalf of Participants as set forth above and in the Collective Bargaining Agreements, the City shall contribute to the Trust Fund such additional moneys which together with those contributions and return on investments shall be sufficient to fund the benefits provided on a sound actuarial basis. Participants shall contribute those amounts required for additional extended Family Riders in effect as of 8-22-96 and otherwise as determined by the trustees.

* * *

Section 2. The Trustees may compel and enforce payments of contributions, in any manner they deem proper. The Trustees may make such additional rules and regulations for the enforcement of the collection payments as they deem proper.

* * *

ARTICLE V

Powers and Duties of the Trustees

* * *

---

[1] "Grantor" is undefined but the "declaration of trust and agreement" is stated to be by the city and the trustees of the trust and is signed by the city's mayor and finance director in that capacity and also in the capacity as trustees and by the other two original trustees.

Section 2: The Trustees shall carry out the purposes of this Trust Agreement, and may maintain any health benefit programs and insurance policy or policies now in force and effect and available to Police and Fire retirees of the City of Pontiac or may substitute other comparable or superior policies in lieu thereof. In providing group life insurance to the Participants of this Plan so as to effectuate the purposes of this Trust Agreement, the Trustees shall be bound by the terms of this Trust Agreement *and any applicable Collective Bargaining Agreements between the City and the collective bargaining associations* and shall comply with all applicable laws.

\* \* \*

## ARTICLE VII

### Liabilities of the Parties

Section 1: The City shall not be liable for payment to the Trust of any amounts other than those required of it by this Trust Agreement or any applicable Collectible Bargaining Agreement. The City shall not be liable to make contributions to the Trust or pay any expenses whatsoever in connection therewith, *except as provided by the terms of the Collective Bargaining Agreements* between the collective bargaining association and the City and the terms of this Trust Agreement. . . .

\* \* \*

## ARTICLE X

### Amendments

Section 1: The provisions of this Declaration of Trust and Agreement may be amended at any time, by (A) collective bargaining between the collective bargaining associations identified in Article 1, Section 8 and the City of Pontiac (B) by a unanimous vote of the five (5) Trustees, concurred in by the City Council of the City of Pontiac provided, however, that such Amendments are not inconsistent with any applicable Collectible Bargaining Agreements and do not adversely affect the tax exempt status of the 501(c)9 Trust. . . . [Declaration of Trust, executed January 30, 1997 (emphasis added).]

Although the plain language of the trust does not directly state when a required contribution is due, plaintiff asserts and defendant agrees that the actuarial required contribution to the trust for the fiscal year commencing July 1, 2011 and ending June 30, 2012, was due on or before June 30, 2012. It is also undisputed that during the fiscal year ending June 30, 2012, the city's EM entered termination collective bargaining agreements with the various police and firefighter unions. The city also contracted to receive police services from Oakland County effective August 1, 2011, and fire services from Waterford Township, effective February 1, 2012.

On August 1, 2012, the city's EM issued Executive Order (EO) 225 that purported to amend the trust pursuant to MCL 141.1519(1)(k) of 2011 PA 4, to terminate the city's annual actuarially required contribution to the trust for fiscal year ending June 30, 2012. The order read with respect to its substantive provision as follows:

> Article III of the Trust Agreement, Section 1, subsections (a) and (b) are amended to remove Article III obligations of the City to continue to make contributions to the Trust as determined by the Trustees through actuarial evaluations.
>
> The Order shall have immediate effect.

The issuance of EO 225 was preceded by the EM's letter of July 10, 2012 to State Treasurer Andrew Dillon, seeking concurrence in the EM's plan to invoke the authority of § 19(1)(k) of PA 4 to modify the trust by modifying existing CBAs to eliminate the city's obligation to contribute to the trust. The letter outlined provisions of the trust regarding contributions, art III, §§ (1)(a) & (b), and its provisions regarding amendments, art X, § (1). The EM also stated in the letter that he "anticipated that the City will be required by the Trustees of the VEBA to contribute $3,915,371 during the fiscal year ending June 30, 2013."

In further making the case for the exercise of authority under § 19(1)(k) of PA 4, the EM wrote that he was unable to negotiate with local police and firefighter unions because the city had contracted for police and firefighter services, and the local unions no longer existed. The EM also noted that amendment of the trust by unanimous action of the trustees under art X would not occur. The EM observed that "[u]nless action is taken to eliminate the VEBA contribution obligation the City anticipates that it will not be able to make the annual contribution required by the Trustees in June 2012, and for subsequent years thereafter." The EM also noted the termination of the city's obligation to the trust for the fiscal year ending June 30 2012, would not create a hardship because the trust had sufficient assets to fund retiree insurance benefits for "a significant number of years going forward." The EM then stated that the "amount saved in the fiscal year beginning July 1, 2012, by a modification of the collective bargaining agreements obligations of the trust will significantly contribute to the City's ability to make the contributions to all other retirees and employees for healthcare benefits for the fiscal year beginning June [sic] 1, 2012, and thereafter." The EM concluded his request for authority by noting: "Time is of the essence. The new fiscal year starts July 1, 2012. In order to have maximum impact on the 2012/2013 fiscal year given the time frames of the notice Trustees of this action, I urge prompt consideration for this request."

The State Treasurer responded to the EM's July 10, 2012 letter in a letter dated July 16, 2012. In his letter, the State Treasurer outlined the "general economic problem" facing the city. The State Treasurer also reviewed the requirements of § 19(1)(k) of PA 4 to "reject, modify, or terminate one or more terms and conditions of an existing collective bargaining agreement." The State Treasurer also found with respect to the EM's request that the four conditions of MCL 141.1519(1)(k) had been satisfied. The State Treasurer approved the proposed modification without stating to which fiscal year it would commence but stated that the changes "can save the City approximately $3.9 million annually . . . ."

The EM issued Executive Order 225 on August 1, 2012, providing that it "have immediate effect." On August 8, 2012, plaintiff filed its complaint alleging, with respect to defendant's failure to pay its actuarially required contribution to the trust, in Count II, a violation of Const 1963, art 9, § 24; in Count IV, a violation of an ordinance; and in Count VI, breach of contract. Plaintiff only challenged defendant's failure to pay its required contribution to the Trust for the fiscal year July 1, 2011 through June 30, 2012. The other counts in plaintiff's complaint related to defendant's failure pay its required contribution to the Pontiac Police and Fire Retirement System. On March 21, 2013, the parties stipulated to dismissing these claims, apparently because the claims had been settled.

On March 6, 2013, defendant moved for summary disposition. In relevant part, defendant argued that Count II was meritless because our Supreme Court held in *Studier*, 472 Mich 642, that Const 1963, art 9, § 24 does not apply to healthcare benefits. Defendant argued that Count IV was meritless because 2011 PA 4 authorized the emergency manager to amend city ordinances, and Count VI was meritless because 2011 PA 4 authorized the emergency manager to modify an existing collective bargaining agreement.

At the conclusion of the motion hearing, the trial court decided to grant defendant's motion for summary disposition in accordance with defendant's legal arguments. On May 14, 2013, the trial court entered its order granting defendant's motion for summary disposition. Plaintiff now appeals by right.

## II. STANDARD OF REVIEW

Although the trial court did not identify under which subrule it granted summary disposition, we review the trial court's decision under the standard applicable to MCR 2.116(C)(10) "because the trial court's consideration went beyond the parties' pleadings." *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 59; 680 NW2d 50 (2004). As with all such motions, we review de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). The trial court in deciding the motion must view the substantively admissible evidence submitted up to the time of the motion in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). Summary disposition may be granted if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

The proper interpretation of a contract and the legal effect of one of its clauses are legal questions reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 461, 464; 703 NW2d 23 (2005). When determining the meaning of a contract, a court must assign undefined words in the contract their "plain and ordinary meaning that would be apparent to a reader of the instrument." *Id.* at 464. A dictionary may be consulted to ascertain the plain and ordinary meaning of words or phrases as they would appear to a reader of the contract. *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007). After ascertaining the meaning of a contract's terms, "a court must construe and apply unambiguous contract provisions as written."

-6-

*Rory*, 473 Mich at 461.  Any other legal questions relating to interpretation of the contracts at issue or pertinent statutes are also reviewed de novo.  *Studier*, 472 Mich at 649; *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 369; 803 NW2d 698 (2010).

## III. ANALYSIS

### A. REPEAL OF PA 4

2011 PA 4 was "suspended" on August 8, 2012, by the State Board of Canvassers' certification of the sufficiency of the referendum petitions regarding the act filed on February 29, 2012.  See Const 1963, art 2, § 9; MCL 168.477(2); *Stand Up For Democracy v Secretary of State*, 492 Mich 588, 595 n 3, 598, 619-620; 822 NW2d 159 (2012); OAG, 2011-2012, No. 7267, p 72, 78 (August 6, 2012).[2]  The State Board of Canvassers' certification on November 26, 2012, of the fall general election results disapproving 2011 PA 4 had the effect of repealing the act and reviving the Local Government Fiscal Responsibility Act, 1990 PA 72, MCL 141.1201 *et seq.*, effective on the suspension of 2011 PA 4.  See *Martin v Murray*, ___ Mich App ___; ___ NW2d ___ (Docket No. 319509, January 20, 2015), slip op at 2-3; see also *In re Detroit*, 504 BR 191, 216; 2013 Bankr LEXIS 5120 (Banker ED Mich, 12/5/2013), citing *Davis v Roberts*, unpublished order of the Court of Appeals, entered November 16, 2012 (Docket No. 313297).  The revived 1990 PA 72 was repealed and replaced by 2012 PA 436, MCL 141.1541 *et seq.*, effective March 28, 2013.  See *Martin*, slip op at 2-3; *In re Detroit*, 504 BR at 216, 250.

The parties do not discuss the effect of the suspension of PA 4 one week following the issuance of Executive Order 225 on August 1, 2012.  Their arguments assume, however, that the EM's actions pursuant to PA 4 before its suspension, provided the actions comport with the act's terms, remain valid and enforceable.  We agree.  See *Minty v Bd of State Auditors*, 336 Mich 370, 390-391; 58 NW2d 106 (1953), quoting *Cusick v Feldpausch*, 259 Mich 349; 353; 243 NW 226 (1932), quoting 1 Lewis' Sutherland Statutory Construction (2d ed), § 284:

> A law can be repealed by the law-giver; but *the rights which have been acquired under it while it was in force do not thereby cease*.  It would be an act of absolute injustice to abolish with a law all the effects which it had produced.  This is a principle of general jurisprudence; but a right to be within its protection must be a vested right.  It must be something more than a mere expectation based upon an anticipated continuance of the existing law.  It must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, *or a legal exemption from a demand made by another*.  [Emphasis added; see also *Peters v Goulden*, 27 Mich 171 (1873).]

The legislature has similarly provided that the repeal of a statute will not affect a penalty, forfeiture or liability incurred before the statute's repeal.

---

[2] Opinions of the Attorney General are not binding, but we find OAG, 2011-2012, No. 7267, p 72, 78 (August 6, 2012)  persuasive.  See *Martin v Murray*, ___ Mich App ___; ___ NW2d ___ (Docket No. 319509, January 20, 2015), slip op at 2, n 2.

The repeal of any statute or part thereof shall not have the effect to release or relinquish any penalty, forfeiture, or liability incurred under such statute or any part thereof, unless the repealing act shall so expressly provide, and such statute and part thereof shall be treated as still remaining in force for the purpose of instituting or sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. [MCL 8.4a.]

Consequently, we conclude that if the EM validly acted pursuant to the authority of 2011 PA 4 to amend existing CBAs such that the terms of trust were modified to remove the city's actuarially required contribution to the trust for the fiscal year ending June 30, 2012, then such action remains valid and enforceable despite the subsequent repeal by referendum of the act.

B. CONST 1963, ART 9, § 24

Count II of plaintiff's complaint alleges a violation of Const 1963, art 9, § 24, which reads in its entirety as follows:

The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

"These two clauses unambiguously prohibit the state and its political subdivisions from diminishing or impairing 'accrued financial benefits,' and require them to fund 'accrued financial benefits' during the fiscal year for which corresponding services are rendered." *Studier*, 472 Mich at 649. But the Court also held that "health care benefits are not 'accrued financial benefits' and, thus, are not protected by Const 1963, art 9, § 24." *Id.* at 670.

Plaintiff does not dispute the holding of *Studier,* but it does argue its claim in the instant case is distinguishable because Article II of the trust reads in relevant part: "The grantor intends the benefits provided by this Trust to be considered a benefit guaranteed by Article 9, Section 24 of the State of Michigan Constitution." Therefore, plaintiff argues, the plain language of the trust elevates otherwise unprotected health-care benefits to the protection of Const 1963, art 9, § 24. Plaintiff's argument is not premised on the first clause of Const 1963, art 9, § 24; plaintiff asserts that defendant violated the second clause of Const 1963, art 9, § 24 by refusing to fully fund the retirees' future group health-care insurance benefits on an annual basis.

The trial court correctly dismissed this claim. As explained by the Court in *Studier*, the threshold question regarding whether the funding requirement of the second clause of Const 1963, art 9, § 24 applies is whether "accrued financial benefits" are at issue. *Studier*, 472 Mich at 653.

Specifically, the first clause contractually binds the state and its political subdivisions to pay for retired public employees' "accrued financial benefits . . . ." Thereafter, the second clause seeks to ensure that the state and its political

-8-

subdivisions will be able to fulfill this contractual obligation by requiring them to set aside funding each year for those "financial benefits arising on account of service rendered in each fiscal year . . . ." [*Id.* at 654.]

So, because the funding requirement of the second clause of Const 1963, art 9, § 24 only applies to "accrued financial benefits," and prefunding insurance for future health care benefits are not "accrued financial benefits," *Studier*, 472 Mich at 654, 670, it follows that the second clause of Const 1963, art 9, § 24 does not apply in this case. Moreover, even if it applied, the second clause of Const 1963, art 9, § 24 does not guarantee any particular method of funding accrued liability of future benefits. *Shelby Twp Police & Fire Ret Bd v Shelby Twp*, 438 Mich 247, 254; 475 NW2d 249 (1991); *Kosa v State Treasurer*, 408 Mich 356, 371-372; 292 NW2d 452 (1980). The trial court correctly concluded that plaintiff's constitutional claim lacked merit.

## C. ORDINANCE VIOLATION

Count IV of plaintiff's complaint alleges violation of an ordinance. Plaintiff does not identify which ordinance defendant allegedly violated. Rather, plaintiff only cites the provisions of the trust instrument obligating defendant to financially contribute to the trust. Defendant's alleged violation of these provisions would be properly categorized as breach of contract. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Moreover, our research has uncovered no local ordinance concerning health care benefits for retired police and firefighters. Chapter 92 of the Pontiac Municipal Code is titled "Retirement." The final article, Article IV, §§ 92-101 to 92-125, is titled "Policemen's and Firemen's Retirement System." Article IV apparently governs the PFRS. We are unable to identify any city ordinance governing the trust or health care benefits for retired police and firefighters, nor has plaintiff cited to one. Consequently, we must conclude that the trial court correctly dismissed plaintiff's claim regarding an ordinance violation with respect to defendant's funding of the trust.

## D. BREACH OF CONTRACT

Count VI of plaintiff's complaint asserts a claim for breach of contract regarding the actuarial required contribution to the trust for the fiscal year commencing July 1, 2011 through June 30, 2012, which the parties agree was due on or before June 30, 2012. There is no dispute that art III, § 1 of the trust obligates defendant to pay annual contributions to the trust that are determined to be "actuarially necessary" to fund the future health-care benefits of the pertinent retirees as required by the applicable collective bargaining agreements. Indeed, it was this significant ongoing liability that prompted the EM to seek the State Treasurer's authorization to modify the terms of the trust through the authority of § 19(1)(k) of PA 4, MCL 141.1519(1)(k).

Initially we address whether the EM's action of issuing EO 225 on August 8, 2012 retroactively eliminates the city's obligation under the trust and various CBAs that accrued on or before June 30, 2012. On July 1, 2012 the city's actuarial required contribution to the trust was past due. Consequently, without modification, the city's obligation to fund the trust was breached on July 1, 2012. See *Tenneco, Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 458;

761 NW2d 846 (2008) (a breach of contract occurs when a party fails to perform its contractually required duties). We note that although a trust is generally distinguishable from a contract, a promise to place future property in trust may be enforced as a contract right. See 76 Am Jur 2d Trusts § 250, p 309; 2 Restatement Trusts, 3d, § 41, comment c, pp 183-184. Here, reading the trust as whole, the city's obligation to fund the trust flows from the pertinent collective bargaining agreements, and the trust is not an independent contractual obligation. See art I, § 1; art III, § 1(a), cl 2; art V, § 2. As stated in art VII, § 1, "The City shall not be liable to make contributions to the Trust or pay any expenses whatsoever in connection therewith, *except as provided by the terms of the Collective Bargaining Agreements* between the collective bargaining association and the City and the terms of this Trust Agreement." (Emphasis added).

At oral argument, the parties disagreed whether the EM could retroactively modify the city's accrued trust liability but otherwise did not cite to pertinent authority to support their respective positions. We agree with defendant's position. Under PA 4, the EM may modify collective bargaining agreements, and, hence, may modify the city's obligation to contribute to the trust. Moreover, the trust itself, art X, § 1 provides it may be "amended at any time" by "collective bargaining . . . ." And, after complying with the conditions specified in PA 4, the EM may "reject, modify, or terminate 1 or more terms and conditions of an existing collective bargaining agreement." MCL 141.1519(1)(k). Because the parties to a collective bargaining agreement could apply its modified terms retroactively, we conclude that the EM also could do so under § 19(1)(k). See *Port Huron Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309, 326; 550 NW2d 228 (1996): "Generally, parties are free to take from, add to, or modify an existing contract." While a modification would normally require a "meeting of the minds" of the contracting parties, *id*. at 326-327, this requirement is dispensed with where the EM acts pursuant to the authority of § 19(1)(k). Consequently, assuming the EM properly invoked the authority granted by PA 4, the EM could retroactively eliminate the city's actuarial required contribution to the trust for the fiscal year July 1, 2011 through June 30, 2012.

But the question remains whether Executive Order 225, assuming it were properly adopted under the authority of PA 4, did, in fact, eliminate the city's actuarial required contribution to the trust for the fiscal year July 1, 2011 through June 30, 2012. We conclude it did not. The plain language of Executive Order 225 provides that the trust is "amended to remove Article III obligations of the City *to continue to make* contributions to the Trust." (Emphasis added.) The term "continue" means to "go on or keep on without interruption, as in some course or action." *Random House Webster's College Dictionary* (1992). Plainly, the term "continue" relates to present and future action. Further, Executive Order 225 provided it "shall have immediate effect." Because Executive Order 225 was adopted August 1, 2012, given immediate effect and applied to the present of present or future obligations under art III, § 1, by its own terms, it did not apply to the to the city's already accrued actuarial required contribution to the trust for the already ended fiscal year July 1, 2011 through June 30, 2012.

This plain reading of EO 225 is also supported by the EM's request for concurrence and the State Treasurer's approval of authority granted to the EM to adopt EO 225. In his letter to the State Treasurer of July 10, 2012, after noting the city's article III funding obligation, the EM stated that it was "anticipated that the City will be required by the Trustees of the VEBA to contribute $3,915,371 *during the fiscal year ending June 30, 2013*." (Emphasis added.) While the EM also mentioned the city's trust obligation for the fiscal year ending June 30, 2012, he

wrote that the "amount saved *in the fiscal year beginning July 1, 2012*, by a modification of the collective bargaining agreements obligations of the Trust will significantly contribute to the City's ability to make the contributions to all other retirees and employees for healthcare benefits for the fiscal year *beginning June [sic] 1, 2012*, and thereafter." (Emphasis added.) The EM concluded his letter with a request for timely action so as to "have *maximum impact on the 2012/2013 fiscal year . . . .*" (Emphasis added.) Thus, although not free of all ambiguity, the July 10, 2012 letter, read as a whole, is a request to amend the city's trust funding obligation beginning with the fiscal year commencing July 1, 2012.

Similarly, the State Treasurer's letter of July 16, 2012, determining that the four conditions of MCL 141.1519(1)(k) were satisfied and justified the EM's proposed action, supports determining that the modification applied to the city's trust contributions for the fiscal year of July 1, 2012 to June 30, 2013, and thereafter. The State Treasurer, in finding that MCL 141.1519(1)(k)(*ii*)[3] was satisfied, wrote that "[t]he proposed modification of the collective bargaining agreements as to retiree health care contributions to a VEBA is reasonable and necessary" and "changes to language relating to retiree benefits can save the City approximately $3.9 million annually . . . ." The EM's July 10, 2012 letter referred to a similar amount as the city's anticipated required contribution to the trust for the fiscal year ending June 30, 2013.

We reverse and remand for further proceedings. We do not retain jurisdiction. No taxable costs are awarded to either party, a public question being involved. MCR 7.219.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Karen M. Fort Hood

---

[3] MCL 141.1519(1)(k)(*ii*) provides: "Any plan involving the rejection, modification, or termination of 1 or more terms and conditions of an existing collective bargaining agreement is reasonable and necessary to deal with a broad, generalized economic problem."