# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 15, 2018

154745

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

BOARD OF TRUSTEES OF THE CITY OF
PONTIAC POLICE AND FIRE RETIREE
PREFUNDED GROUP HEALTH AND
INSURANCE TRUST,
          Plaintiff-Appellee,

v

CITY OF PONTIAC,
          Defendant-Appellant.

SC: 154745
COA: 316418
Oakland CC: 2012-128625-CZ

_____/

On January 10, 2018, the Court heard oral argument on the application for leave to appeal the October 25, 2016 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

McCORMACK, J. (*concurring*).

Retroactive laws are often unfair. They upset settled expectations, impose new burdens, and disrupt old agreements. And so we presume laws are prospective unless they say otherwise in very clear terms. The Court of Appeals reaffirmed this foundational principle, and we rightly leave its work in place.

The Pontiac Police and Fire Retiree Prefunded Group Health and Insurance Trust (the Trust) was organized to pay the healthcare benefits of retired police and firefighters. Under the agreement, the city of Pontiac made retirement benefit payments. But in 2012, the city came under the control of an emergency manager, and after following the necessary steps, the emergency manager issued Executive Order 225 on August 1, 2012. Order 225 read in relevant part:

> Article III of the Trust Agreement, Section 1, subsections (a) and (b) are amended to remove Article III obligations of the City to continue to make contributions to the Trust as determined by the Trustees through actuarial evaluations.

> The Order shall have immediate effect.

As a result, the city stopped contributing to the retirement trust fund, and the Trust sued. The only question for us is whether Order 225 has retroactive effect. If the order is

retroactive, the city would not need to make contributions for the period from 2011 to the date the order issued, August 1, 2012. If the order is not retroactive, the city must make the contributions that accrued up until that date. Several million dollars hang in the balance.

Following a lengthy procedural journey, the Court of Appeals held that *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26 (2014), in which we clarified the test for determining the retroactivity of statutes, governs the analysis of whether an executive order has retroactive effect. Applying that framework, the panel held that Order 225 should not be given retroactive effect. I see no flaw in the panel's work; our decision today to deny leave is appropriate.

The rules of statutory interpretation about retroactivity are settled and sound. When determining whether a statute should be given retroactive effect we look first to legislative intent, *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583 (2001), and the plain text of the statute is our starting place, *Madugula v Taub*, 496 Mich 685, 696 (2014).[1] *LaFontaine* created a four-part framework to determine the retroactivity of statutes, and two parts are particularly salient: we must consider whether (1) there is specific language providing for retroactive application, and whether (2) retroactivity would impair vested rights or create new obligations. *LaFontaine*, 496 Mich at 38-39. Although *LaFontaine*'s four-part framework was new, its requirement that the Legislature must speak with clarity to make a law retroactive is a traditional rule of statutory interpretation. *Harrison v Metz*, 17 Mich 377, 382 (1868) ("[I]t is a sound rule of statutory construction that legislation is to have a prospective operation only, except where the contrary intent is expressly declared or is necessarily to be implied from the terms employed."). See also *Murray v Gibson*, 56 US 421, 423 (1853).

There is no compelling reason to treat executive orders differently for retroactivity analysis. An executive order is quasi-legislative and should be interpreted with the same approach used to interpret a statute. *Soap & Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 756-757 (1982); *Aguirre v Dep't of Corrections*, 307 Mich App 315, 321 (2014). And emergency managers derive their power from the Legislature, which further supports the conclusion that the same rules should apply to determine whether their orders are retroactive. See former MCL 141.1519, as enacted by 2011 PA 4. The United States Supreme Court has held that the heightened clarity required for retroactivity applies to statutes and administrative rules alike. *Bowen v Georgetown Univ Hosp*, 488 US 204, 208 (1988).

---

[1] The city agreed that we should look at the plain text of Order 225 to determine the emergency manager's intent in its original application brief before this Court. See Defendant's June 4, 2015 Application for Leave to Appeal, pp 20-21.

Nothing about this conclusion is groundbreaking, as "[c]ourts have long used the same set of tools to interpret both executive orders and statutes." Newland, Note, *Executive Orders in Court*, 124 Yale L J 2026, 2069 (2015). The dissent agrees that the rules for interpreting statutes apply to interpreting executive orders. ("There is no doubt that courts must interpret an executive order using the ordinary means of statutory interpretation."). Given that, I see no principled way to exempt retroactivity analysis. The settled precedent that governs courts' interpretations of statutes provides a readily understandable set of expectations for interpreting executive orders. If we were to announce some new, yet-unspecified, set of rules to discern retroactive application of executive orders, we would be sending parties off to sea without a compass, and inviting a host of new litigation. Underlying concerns about unfairness do not change, and neither should our rules: emergency managers must clearly demonstrate their intent that an order be retroactive.

Because these same rules apply, precedent stacks the deck against finding retroactivity here. The " 'general rule is that a statute is to be construed as having a prospective operation only, unless its terms show clearly a legislative intention that its terms should operate retroactively.' " *Barber v Barber*, 327 Mich 5, 12 (1950) (collecting cases; citation omitted). This presumption of prospectivity "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v USI Film Prod*, 511 US 244, 265 (1994). And it applies even if "the words of the statute are broad enough in their literal extent to comprehend existing cases . . . unless a contrary intention is unequivocally expressed . . . ." *Todd v Boards of Election Comm'rs*, 104 Mich 474, 478-479 (1895) (quotation marks and citation omitted).

Against this backdrop, *LaFontaine* instructs courts to consider whether there is specific language providing for retroactive application. The expression of retroactive intent must be "clear, direct, and unequivocal . . . ." *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 156 (2006). The expression here is not; there is no express language signaling retroactive effect. The absence of such language is important to concluding that the order should not be retroactive. See *Frank W Lynch & Co*, 463 Mich at 583-584; *White v Gen Motors Corp*, 431 Mich 387, 398 (1988); *Van Fleet v Van Fleet*, 49 Mich 610, 613 (1883). And the order contains a telltale forward-looking phrase: "The Order shall have immediate effect." When the Legislature provides that a law will take immediate effect, that supports a finding of textual prospectivity. *LaFontaine*, 496 Mich at 40. See also *Pohutski v City of Allen Park*, 465 Mich 675, 698 (2002); *Davis*, 272 Mich App at 157.

The Legislature, moreover, knows full well how to make laws retroactive, and the emergency manager could have used similar language if retroactivity was the goal. See, e.g., MCL 141.1157 ("This act shall be applied retroactively . . . ."); MCL 324.21301a(2) ("The liability provisions that are provided for in this part shall be given retroactive application."); MCL 224.19(2) ("The authority and powers granted in this section relative

to bridges over navigable streams and the grant of that authority are retroactive . . . .”). See also *LaFontaine*, 496 Mich at 40 n 30 (noting that MCL 445.1567(1)-(2), MCL 445.1568, and MCL 445.1570 each begin with the preface “Notwithstanding any agreement” as a sign they were retroactive).  Any of these phrases would show retroactive intent, but none were used.  Nor does the language of Order 225 give rise to a “necessary, unequivocal and unavoidable implication” that the manager intended it to apply retroactively.  *Briggs v Campbell, Wyant & Cannon Foundry Co*, 379 Mich 160, 165 (1967) (cleaned up).  As a result, Order 225 fails to overcome the heavy presumption against retroactivity.

Whether the Legislature was clear in its *grant of authority* to the emergency manager to devise retroactive orders, as the dissent emphasizes, is beside the point.  Our focus must be on the text of the executive order that abrogated the contract, not the authority to issue the order.[2]  The question is not whether the emergency manager *could* have issued a retroactive order, it is whether he did.

Settled expectations matter too.  Retroactive application of the order would upend the rights and obligations of those affected by it.  The presumption of prospectivity is therefore especially strong “if retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions.”  *Frank W Lynch & Co*, 463 Mich at 583.  See also *Johnson v Pastoriza*, 491 Mich 417, 429 (2012); *Hansen-Snyder Co v Gen Motors Corp*, 371 Mich 480, 484 (1963).

That concern is significant here.  Pontiac’s police and firefighters may have spent years—or entire careers—expecting that benefits would be paid out upon retirement.  The city’s financial distress may support the need for drastic action, but it does not weaken the plaintiff’s reliance interests.  Even assuming the emergency manager had the authority to invalidate contracts (a constitutional question not before us here), the plaintiff’s reliance interests would still stand.  There is a crucial difference between affecting a future source of income and taking property away.

These are central principles in our jurisprudence.  “All laws should be therefore made to commence *in futuro* . . . .”  1 Blackstone, Commentaries on the Laws of England, p *46.  Our own Justice COOLEY said that “[r]etrospective legislation . . . is

---

[2] Otherwise, there would be no need to subject the Legislature to a heighted clarity requirement.  The Michigan Constitution vests the Legislature with broad legislative powers and does not limit it to prospective legislation. Const 1963, art IV, § 1.  But the fact that the Legislature indisputably has authority to pass retroactive laws does not relieve it of the obligation to make its intent clear. The same principle should hold true for emergency managers.

commonly objectionable in principle, and apt to result in injustice . . . ." Cooley, Constitutional Limitations (1868), pp 62-63. Without clear language to the contrary, these critiques apply with equal force to executive orders. The Court of Appeals got this right, and for that reason, I support this Court's denial of the defendant's application for leave to appeal.

VIVIANO and BERNSTEIN, JJ., join the statement of MCCORMACK, J.

ZAHRA, J. (*dissenting*).

I respectfully dissent from the majority's order denying leave in this case. "A statute presumptively has no retroactive application. . . . As a general, almost invariable rule, a legislature makes law for the future, not for the past."[3] "Retroactive application of legislation ' "presents problems of unfairness . . . because it can deprive citizens of legitimate expectations and upset settled transactions." ' "[4] "We have therefore required that the Legislature make its intentions clear when it seeks to pass a law with retroactive effect."[5] This requirement, in essence, is a departure from our traditional rules of statutory interpretation that would ordinarily provide that "[w]hen a statute's language is unambiguous, 'the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No *further* judicial construction is required or permitted.' "[6] In *LaFontaine Saline, Inc v Chrysler Group, LLC*,[7] this Court provided a framework to *further* evaluate whether the Legislature clearly intended that a new law be given retroactive application. In my view, *LaFontaine* has no application to executive action implemented through executive orders. The Court has erroneously applied the *LaFontaine* retroactivity framework to set aside the legitimate action of the emergency manager. In lieu of granting leave to appeal, I would reverse the Court of Appeals judgment and remand to the Court of Appeals to address the issues plaintiff presented in that court but were not decided.

---

[3] See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012), p 261; see also 2 Singer & Singer, Sutherland Statutory Construction (7th ed), § 41:2, p 386 ("A fundamental principle of jurisprudence holds that retroactive application of new law is usually unfair.").

[4] *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 38 (2014), quoting *Downriver Plaza Group v Southgate*, 444 Mich 656, 666 (1994), in turn quoting *Gen Motors Corp v Romein*, 503 US 181, 191 (1992).

[5] *LaFontaine*, 496 Mich at 38, citing *Frank W Lynch & Co v Flex Technologies*, 463 Mich 578, 583 (2001).

[6] *Madugula v Taub*, 496 Mich 685, 696 (2014), quoting *Malpass v Dep't of Treasury*, 494 Mich 237, 247-248 (2013) (emphasis added).

[7] *LaFontaine*, 496 Mich 26.

Thirty years ago, faced with the insolvency of certain local units of government, the Legislature passed the Local Government Fiscal Responsibility Act (LGFRA),[8] which provided for the appointment of an emergency financial manager upon a determination of a financial emergency in a local unit of government. In 1990, the Legislature expanded the power of the emergency financial manger to include all matters of finances of a distressed local unit of government and extended the LGFRA to the management of insolvent public school districts.[9] Faced with the effects of the Great Recession, in 2011 the Legislature again expanded the powers of the emergency manager in the Local Government and School District Fiscal Accountability Act (LGSDFAA),[10] which provided a properly appointed emergency manager with power to declare "[t]he modification, rejection, termination, and renegotiation of contracts . . . ."[11]

In each legislative action described above, the Legislature declared, in identical or similar terms, that "the public health and welfare of the citizens of [Michigan] would be adversely affected by the insolvency of units of local of government[.]"[12] In order to protect against these hazards and remedy the financial crises experienced by insolvent units of government, appointed emergency managers would implement the vast powers bestowed upon them by the state to achieve "prudent fiscal management."[13]

There is no dispute that the city of Pontiac was in financial distress and that the Governor properly appointed an emergency manager to address the financial insolvency and instability of the city. Acting pursuant to the LGSDFAA, the city's emergency manager issued Executive Order (EO) 225 on August 12, 2011, which declared, in part, that the city was no longer obligated to make contributions to the police and firefighters voluntary employees' beneficiary associations (VEBA), which is a trust created to

---

[8] 1988 PA 101, former MCL 141.1101 through MCL 141.1118.

[9] 1990 PA 72, former MCL 141.1201 through MCL 141.1244.

[10] 2011 PA 4, former MCL 141.1501 through 141.1531.

[11] Former MCL 141.1518(1)(c).

[12] Former MCL 141.1102 and former MCL 141.1202; see also former MCL 141.1503 (stating that "the health, safety, and welfare of the citizens of [Michigan] would be materially and adversely affected by the insolvency of local governments"). Public Act 436 of 2012 has since replaced former MCL 141.1501 through 141.1531, but MCL 141.1543(a) currently contains this same language as former MCL 141.1503 under the now-named Local Financial Stability and Choice Act.

[13] Former MCL 141.1102 and former MCL 141.1202. This goal was expanded in later acts to include the "efficient provision of services." See former MCL 141.1503 and current MCL 141.1543(b).

provide health insurance to retired police and fire personnel. Specifically, EO 225 provided:

> [The Trust is] amended to remove [the] obligations of the City to continue to make contributions to the Trust as determined by the Trustees through actuarial evaluations.
>
> The Order shall have immediate effect.

Plaintiff, the board of trustees of the VEBA, contested the authority of the emergency manager to set aside the contributions to the VEBA on several grounds, and the trial court rejected them in total. Plaintiff appealed. In its March 17, 2015 published opinion, the Court of Appeals concluded that the emergency manager was authorized to retroactively modify the VEBA.[14] Nonetheless, the panel concluded that the language of EO 225 only "remove[d the contractual obligations] of the City [of Pontiac] *to continue to make* contributions to the Trust[.]"[15] Focusing on the word "continue," the panel concluded that EO 225 did not set aside the accrued amount of $3,473,923 that was past due and owing to the VEBA.[16]

The city of Pontiac sought leave to appeal in this Court, arguing that because the past due contribution had not been funded, it was an obligation included within the scope of EO 225. This Court reversed the Court of Appeals and held:

> EO 225 clearly states that, as of August 1, 2012, the [city of Pontiac] no longer has an obligation "to continue to make contributions" under Article III of the Trust Agreement. It does not differentiate between already accrued, but unpaid obligations and future obligations, and thus by its terms applies to both. Accordingly, the Court of Appeals erred by concluding that the emergency manager did not intend to extinguish the [city]'s 2011-2012 fiscal year contribution.[17]

This Court also remanded the case to the Court of Appeals to address an issue not raised or argued by plaintiff in the lower courts: whether the emergency manager's action was impermissible under the test for retroactivity set forth in *LaFontaine*. Specifically,

---

[14] *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac No 1*, 309 Mich App 590, 608 (2015).

[15] *Id*. at 608.

[16] *Id*. at 594, 608-609.

[17] *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac*, 499 Mich 921, 921 (2016).

we asked the Court of Appeals to consider, among other things: "(1) whether the retroactivity analysis stated in *LaFontaine* applies to EO 225; [and] (2) if so, whether the extinguishment of the defendant's accrued, but unpaid, 2011-2012 fiscal year contribution by EO 225 is permissible under *LaFontaine*[.]"[18]

On remand, the Court of Appeals held that the retroactivity analysis of *LaFontaine* applied to EO 225 and that application of EO 225 to the nearly $3.5 million past due contribution violated *LaFontaine*.[19] The city of Pontiac again sought relief in this Court, and we ordered oral argument on the application for leave to appeal.[20] Today, a majority of this Court denies the city's application for leave to appeal.

The *LaFontaine* retroactivity analysis should not apply to action taken by an emergency manager. Simply put, the emergency manager's order was not "legislative action" subject to *LaFontaine*. The Court of Appeals erroneously concluded the *LaFontaine* retroactivity analysis applies because executive orders are interpreted under the same rules of interpretation applicable to statutes, not the nontraditional rules of statutory interpretation that are designed to evaluate whether a statute applies retroactively. There is no doubt that courts must interpret an executive order using the ordinary means of statutory interpretation. This Court has stated that "[t]he use of the same rules of construction for both statutes and executive orders or administrative regulations is not illogical because executive orders and administrative regulations are both quasi-legislative in nature."[21]

But there is no justification for subjecting the plain language of executive orders to the elevated or *further* degree of certainty required for retroactive application of laws enacted by the Legislature. Here, the Michigan Legislature provided emergency managers with broad authority under the LGSDFAA, including the power to reject, amend, modify, or terminate terms of existing collective bargaining agreements. There is no dispute that this Court agreed that the language of LGSDFAA is "so clear and positive as to leave no room to doubt"[22] that the Legislature intended it to grant duly appointed

[18] *Id*.

[19] *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac (On Remand)*, 317 Mich App 570, 574 (2016).

[20] *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac*, 500 Mich 1011 (2017).

[21] *Soap and Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 756-767 (1982), citing 1 Sands, Sutherland Statutory Construction, p 219, and Asselin, *Executive Orders: Discretion vs Accountability*, 51 Conn Bar J 383 (1977).

[22] *Landgraf v USI Film Prod*, 511 US 244, 272 (1994).

emergency managers the power to set aside contractual obligations.[23]  The clarity with which the Legislature declared the power of emergency managers appointed under the LGSDFAA alleviates the very reason that heightened review is used to determine whether legislation is retroactive.  That is, there can be no doubt that the clear, plain, and direct language of the LGSDFAA afforded the public the " 'opportunity to know what the law is and to conform their conduct accordingly . . . .' "[24]  Plaintiff knew or should have known on March 16, 2011, the date the LGSDFAA became effective and more than a year before the emergency manager exercised that power in the instant case, that a properly appointed emergency manager would have the power to modify any contract.  Thus, it cannot be viewed as "unsettling" for the city of Pontiac's emergency manager to have exercised power under LGSDFAA to retroactively amend existing collective bargaining agreements through EO 225.  Given this understanding, EO 225 should not be subject to the elevated degree of certainty required for retroactive application of laws enacted by the Legislature.  Rather, EO 225 should merely be subject to a "[c]ontemporaneous and practical interpretation."[25]

Further, I believe the Court of Appeals misconstrued this Court's ruling in *LaFontaine*.  In *LaFontaine*, this Court simply provided a multi-factor test to determine whether to apply the canon of presumption against retroactivity.  No *LaFontaine* principle is dispositive on whether legislation may be applied retroactively, but instead the factors are guideposts for courts reviewing the law in question.  The plain language of EO 225 is ultimately the best indicator of what the emergency manager intended when issuing EO 225, rather than a court's application of the *LaFontaine* analysis.  Thus, I am not convinced that *LaFontaine* applies here.

Assuming arguendo that the *LaFontaine* retroactivity framework applies to EO 225, the panel erred in concluding that retroactive application was impermissible.  Preliminarily, I agree with the Court of Appeals that Principle Two does not apply under the facts and circumstances of this case.  But I disagree with the Court of Appeals' conclusion that *LaFontaine* Principle Four "does not support retroactive application of EO 225 given that a vested right would be affected."[26]  Principal Four is only implicated by an act that is remedial or procedural, and EO 225 is clearly substantive.  Thus, I

---

[23] In fact, we previously agreed that the city of Pontiac's emergency manager had the power under the LGSDFAA to unilaterally amend existing collective bargaining agreements.  See 499 Mich 921.

[24] *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 166; 725 NW2d 56 (2006), quoting *Landgraf*, 511 US at 265.

[25] 2B Singer & Singer, Sutherland Statutory Construction (7th ed), § 49:3, p 11.

[26] *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees*, 317 Mich App at 586.

conclude that Principle Four offers little guidance, and the *LaFontaine* analysis in this case is controlled by Principles One and Three.

In regard to *LaFontaine* Principle One—"whether there is specific language providing for retroactive application"[27]—the language of EO 225 provides for retroactive application. The plain language of EO 225 clearly states that, as of August 1, 2012, the city no longer had an obligation "to continue to make contributions" to the Trust. The order's language does not differentiate between already accrued, but unpaid obligations and future obligations, and thus expressly applies to both. This is precisely the reason this Court previously ruled that the Court of Appeals erred in concluding that the emergency manager did not intend to extinguish the defendant's FY 2011–2012 contribution.[28]     Given that this Court already said EO 225 was "clear,"

---

[27] *LaFontaine*, 496 Mich at 38.

[28] This Court stated that

> EO 225 by its plain language expresses the intent of the emergency manager to extinguish the defendant's 2011-2012 fiscal year contribution. Although that contribution accrued on June 30, 2012, the defendant had not yet paid the obligation when EO 225 went into effect. EO 225 *clearly* states that, as of August 1, 2012, the defendant no longer has an obligation "to continue to make contributions" under Article III of the Trust Agreement. *It does not differentiate between already accrued, but unpaid obligations and future obligations, and thus by its terms applies to both.* Accordingly, the Court of Appeals erred by concluding that the emergency manager did not intend to extinguish the defendant's 2011-2012 fiscal year contribution. [*Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees*, 499 Mich at 921 (emphasis added).]

meaning "free from obscurity or ambiguity : easily understood : UNMISTAKEABLE,"[29] requiring a greater degree of clarity for that which is already clear strikes me as not only unnecessary but an exercise in futility.

Executive orders are reviewed by the ordinary means of statutory interpretation, and *LaFontaine* does not place upon executive orders what amounts to a redundant elevated burden that they be crystal clear to apply retroactively. In regard to *LaFontaine* Principle Three—keeping in mind that retroactive legislation impairs vested rights acquired under existing laws or created new obligations or duties with respect to transactions or considerations already past—there is no doubt that the retiree's vested rights were impaired with the issuance of EO 225. But impairment of vested rights does not *per se* render retroactive application impermissible. Principle Three only requires the reviewing court to "keep in mind" that retroactive application of a law may impair vested rights.[30] And because retroactive application of EO 225 is exactly the purpose of the emergency manager's powers to amend, modify, or terminate terms of existing agreements (i.e., vested rights), I am restrained by the Legislature's determination and will not thwart its prerogative by applying an overly critical view of the very executive orders that the Legislature intended be issued.

Accordingly, I would reverse the Court of Appeals' decision and remand to the Court of Appeals for consideration of issues that plaintiff presented in that court but were not decided.

WILDER, J., joins the statement of ZAHRA, J.

---

[29] *Merriam-Webster's Collegiate Dictionary* (11th ed).

[30] *LaFontaine*, 496 Mich at 39.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 15, 2018



Clerk

s0612